# THE AETNA INDEMNITY COMPANY vs JOHN WATERS.

*Building Contract—Stipulation as to Architect's Decision—Parol Evidence to Explain Technical Terms—Bond to Secure Performance of Building Contract—Notice to Surety of Changes or Alterations—Slight Deviations—Delay in Work—Waiver of Stipulation as to Signing Specifications—Construction of Bonds.*

A provision in a building contract that the decision of the architect as to the true construction and meaning of the drawings and specifications shall be final does not take from the Court and confer upon the architect the power to construe the contract itself.

When technical terms are used in a written contract, parol evidence is admissible to explain their meaning, which will then become a question for the jury, to whom the Court will give conditional instructions as to the effect of the contract, according as they may find the true meaning of such terms to be.

The plaintiff, who had contracted to erect a large building according to certain plans and specifications, made a sub-contract with the C. Co., which provided that it should perform all the work of re-enforced concrete construction; *i. e.,* columns, beams, floor and roof slabs, etc., as shown on the drawings and

· ! ·described in the specifications prepared by a named architect. The specifications referred to set forth that the floors, beams and columns supporting the same, ceilings, roofs, etc., as shown on plans, should be of re-enforced concrete. The defendant was a surety for the faithful performance of the C. Co.'s contract. In an action on the bond for the failure of the C. Co. to fulfill the contract, the defendant alleged that that company was not bound to erect a concrete ceiling on the upper floor of the building. In the specifications, the word "ceilings" is used, as well as floors and roofs, while in the contract with the C. Co. there is no mention of ceilings, nor any separate mention of roofs, but the two expressions, "floor slabs" and "roof slabs" are found therein. *Held,* that parol evidence is admissible to show that in concrete construction the expressions "floor slabs" and "roof slabs" are used in a technical or peculiar meaning to designate not merely the floor or roof, but also the ceiling below it, as the roof or floor is constructed at the same time as the ceiling under it, and they together form one integral portion of the entire building.

*Held,* further, that the meaning of the technical expression "roof slab" as used in the contract was one for the jury, or for the Court sitting as a jury.

*Held,* further, that if it be found as a fact that the term "roof slab" means the roof, together with the ceiling attached to it, then, under its contract with the plaintiff, the C. Co. was bound to erect the ceiling so attached to the roof as called for in the specifications.

A bond conditioned for due performance of a building contract provided that the surety "shall be notified in writing of any act on the part of the principal which may involve a loss immediately after its occurrence, and must be similarly notified of, and its written consent secured to, any change or alterations made in the original plans or specifications by the obligee." *Held,* that this provision does not require that notice of slight delays or deviations should be given to the surety, since the surety must know that such are bound to occur in every building contract of any magnitude.

A sub-contractor for the concrete construction in a building ceased work about January 11. At that time the contractor

had stopped the sub-contractor. from doing certain work on
account of the erroneous method pursued, but allowed correc-
tions to be made.  Afterwards the work was delayed because
other parts of the building were not sufficiently advanced for
the concrete construction.  When this was ready, the con-
tractor, on February 4th, notified the sub-contractor and the
surety of the fact.  Nothing more was done by either on ac-
count of a dispute between the parties as to what work was
included in the contract.  *Held,* that the failure to notify the
surety of the cessation of work on January 11th does not
operate as a forfeiture of the bond, under the clause providing
that the surety must be notified of any act on the part of the
principal which may involve a loss, immediately after its oc-
currence.

A bond for the due performance of a building contract provided
that the surety must be notified of any change or alterations
made in the original plans, and its consent given thereto.
*Held,* that the omission, under a verbal agreement between
the contractor and the obligee, of a screen partition called for
in the specifications in consideration of a credit of thirty dol-
lars, while the whole contract price was over thirteen thousand
dollars, was such a slight and immaterial change that it can-
not be regarded as avoiding the bond under this clause.

A contract provided for the doing of certain work as described
in the drawings and specifications of the architect, "which
drawings and specifications are identified by the signature of
the parties hereto and become hereby part of this contract."
*Held,* that since there is no question as to the identity of the
drawings and specifications, which were adopted by all the
parties as controlling in the performance of the work, the
failure to sign them is immaterial, and the conduct of the
parties amounted to a waiver of that formality.

The contract formed by a bond given as security for the per-
formance of work should receive a reasonable construction, so
as to effectuate the real intention of the parties, and the con-
struction of the language of such a bond is not different from
the construction of similar language when used in other agree-
ments.

*Decided June 28th, 1909.*

Appeal from the Baltimore City Court (NILES, J.)

The prayers and instructions referred to in the opinion of the Court are as follows:

*Plaintiff's 1st Prayer.*—That if the Court sitting as a jury finds from the evidence that the defendant executed the bond on which this suit is brought, and that the Clarion Concrete Construction Company and John Waters entered into the contract offered in evidence, and mentioned in said bond, and that the roof slabs mentioned in said contract, as shown in the specifications and drawings therein mentioned, had connected therewith as a part thereof a suspended concrete ceiling, the two forming a so-called monolithic construction—that is to say, being so built as to form together one solid piece of concrete—that then, by the true construction of the said contract, the Clarion Concrete Construction Company was bound to erect the ceiling mentioned in the evidence; and if the Court, sitting as a jury, find that said Clarion Concrete Construction Company, without just cause, refused to erect said ceiling, and that the plaintiffs thereby sustained loss and injury, and that the plaintiff further complied with all the conditions contained in the bond on which this suit is brought, that then the verdict must be for the plaintiff. (*Refused.*)

*Plaintiff's 2nd Prayer.*—The plaintiff prays the Court to rule that if the Court, sitting as a jury, finds in favor of the plaintiff, that then in estimating the damages the Court shall allow the plaintiff the cost or expense to which the plaintiff was put in completing that portion of the work called for in the contract between the plaintiff and the Clarion Concrete Construction Company, which portion was not performed by said company; provided said cost and expense was only the reasonable cost and expense thereof, less such sums as were due or would have become due to said company under the terms of said contract in the event that it had completed the same. (*Granted.*)

*Defendant's 1st Prayer.*—There is no evidence legally sufficient under the pleadings in this case to entitle the plaintiff

to recover, and therefore the verdict of the Court, sitting as a jury, must be for the defendant. (*Refused.*)

*Defendant's 2nd Prayer.*—There is no evidence legally sufficient under the pleadings in this case to entitle the plaintiff to recover more than nominal damages. (*Refused.*)

*Defendant's 4th Prayer.*—The defendant prays the Court to instruct itself, sitting as a jury, that if it finds from the evidence in this case that the said Clarion Concrete Construction Company, or its receiver, offered to complete and perform all work specified in the building contract offered in evidence by the plaintiff in the clause of said contract, reading as follows: "Columns, beams, floor and roof slabs, stairs, skylight sides, concrete foundations, concrete underfloors, top finish, asphalt under cells, cement floor finish at stair corridor, safety treads on stairs, all in the New Female Dormitory of the Maryland Penitentiary;" * * * And the said plaintiff did refuse to accept performance of the said work unless the said Construction Company, or its receiver, should likewise agree to construct and complete a certain ceiling, or any other work not mentioned in the above-recited clause of said contract, then, under the pleadings in this case, the verdict must be for the defendant. (*Refused; covered by the Deft.'s 3rd Prayer as modified.*)

*Defendant's 5th Prayer.*—If the Court shall find that the plaintiff refused to permit the Clarion Concrete Construction Company or the defendant to complete the work called for in the contract between said Construction Company and the plaintiff, referred to in the bond sued upon in this case, unless the said Construction Company or the defendant would construct a concrete ceiling for the new Female Dormitory of the Maryland Penitentiary, then, under the pleadings in this case, the verdict must be for the defendant. (*Refused; covered by the Deft.'s 3rd Prayer as modified.*)

*Defendant's 6th Prayer.*—If the Court shall find that the contract between the plaintiff and the Clarion Concrete Construction Company of Baltimore City, dated Sept. 18, 1906, which is in evidence, was the contract referred to in the bond

sued upon in this case, then, by the true construction of said contract, the said Construction Company was under no obligation to construct a ceiling for the new Female Dormitory of the Maryland Penitentiary mentioned in said contract. (*Refused.*)

*Defendant's 7th Prayer.*—There is no evidence legally sufficient to sustain a verdict for the plaintiff upon the issue joined upon the surrejoinder to the third rejoinder to the first replication to the eighth plea, and therefore the verdict upon that issue must be for the defendant. (*Refused.*)

*Defendant's 8th Prayer.*—There is no evidence legally sufficient to sustain a verdict for the plaintiff upon the issue joined upon the surrejoinder to the fourth rejoinder to the first replication to the eighth plea, and therefore the verdict upon that issue must be for the defendant. (*Refused.*)

*Defendant's 9th Prayer.*—There is no evidence legally sufficient to sustain a verdict for the plaintiff upon the issue joined upon the surrejoinder to the third rejoinder to the first replication to the ninth plea, and therefore the verdict upon that issue must be for the defendant. (*Refused.*)

*Defendant's 10th Prayer.*—There is no evidence legally sufficient to sustain a verdict for the plaintiff upon the issue joined upon the surrejoinder to the fourth rejoinder to the first replication to the ninth plea, and therefore the verdict upon that issue must be for the defendant. (*Refused.*)

*Defendant's 12th Prayer.*—If the Court shall find from the evidence that acts on the part of the Clarion Concrete Construction Company or its agents which might involve a loss for which the defendant might be liable under the terms of the bond sued upon in this case came to the knowledge of the plaintiff on or before the 5th day of January, 1907, and that the defendant was not notified in writing of said acts or any of them until the 4th day of February, 1907, then under the pleadings in this case the verdict must be for the defendant. (*Refused; covered by Deft.'s 11th Prayer as modified.*)

*Defendant's 13th Prayer.*—If the Court shall find from the evidence that acts on the part of the Clarion Concrete Con-

struction Company or its agents which might involve a loss for which the defendant might be liable under the terms of the bond sued upon in this case came to the knowledge of the plaintiff on or before the 9th day of January, 1907, and that the defendant was not notified in writing of said acts or any of them until the 4th day of February, 1907, then, under the pleadings in this case, the verdict must be for the defendant. (*Refused; covered by Deft.'s 11th Prayer as amended.*)

*Defendant's 14th Prayer.*—If the Court shall find from the evidence that acts on the part of the Clarion Concrete Construction Company or its agents which might involve a loss for which the defendant might be liable under the terms of the bond sued upon in this case came to the knowledge of the plaintiff on or before the 11th day of January, 1907, and that the defendant was not notified in writing of said acts or any of them until the 4th day of February, 1907, then, under the pleadings in this case, the verdict must be for the defendant. (*Refused; covered by Deft.'s 11th Prayer as amended.*)

. *Defendant's 15th Prayer.*—If the Court shall find from the evidence that part of the work which by the contract between the Clarion Concrete Construction Company and the plaintiff referred to in the bond which is sued upon in this case, the said Clarion Concrete Construction Co. was bound to perform the construction of a certain table-screen or screen partition, and that said table-screen or screen partition was shown on the original plans and specifications referred to in said bond and contract; and that after the execution and delivery of said bond and before the said Construction Company had failed and refused to continue and complete said work, said company wrote to the plaintiff the letter dated January 12th, 1907, which is in evidence, and that the plaintiff replied thereto by the letter dated January 14th, which is in evidence, and that the defendant was not notified of the agreement contained in said letters, and did not consent thereto, then, under the pleadings in this case, the verdict must be for the defendant, even though the Court may further find that said table-screen or screen partition was omitted in

accordance with the written order of Charles M. Anderson, Architect, and that said order specified the amount to be allowed by the Clarion Concrete Construction Company on account of the omission of said table-screen. (*Refused.*)

*Defendant's 16th Prayer.*—The defendant prays the Court to instruct itself, sitting as a jury, that if it find from the evidence in this case that the Clarion Concrete Construction Company agreed with the plaintiff that a sum of money, to wit, the sum of thirty ($30) dollars, should be deducted from the last instalment of the contract price on account of the omission of a certain table-screen appearing on the plans, and alleged or claimed by the plaintiff to form a part of the work, which the said Construction Company was bound to perform under said contract, and if the Court shall further find that said deduction from said contract price was made without the written consent of the Surety, the defendant in this case, then under the pleadings in this case the verdict must be for the defendant. (*Refused.*)

*Defendant's 17th Prayer.*—If the Court shall find from the evidence that on the 14th day of Jany., 1907, the Clarion Concrete Construction Company and the plaintiff agreed together as follows, namely, that the construction of a certain reinforced concrete structure known as a table-screen or screen partition in the second story of the new addition to the Maryland Penitentiary, should be omitted by the said Clarion Company although the same was shown on and by the original plans and specifications of Charles M. Anderson, Architect, referred to in the bond sued upon in this case and that the sum of $30 should in consideration thereof be deducted from the last payment to be made to the said company under its contract with the plaintiff referred to in said bond, then under the pleadings in this case the verdict must be for the defendant even though the Court may further find that said agreement was made upon the letter of said architect to the plaintiff, dated January 13th, 1907, which is in evidence. (*Refused.*)

*Defendant's 18th Prayer.*—If the Court shall find that on the 14th day of January, 1907, the plaintiff agreed with the Clarion Concrete Construction Company that a certain reinforced concrete structure known as a table-screen or screen partition should not be constructed and that the sum of thirty dollars should be deducted from the amount to be paid by the plaintiff to said company under said contract; and if the Court shall further find that the construction of said table-screen or screen partition was shown on and by the original drawings and specifications of Charles M. Anderson, Architect, referred to in said bond and in said contract; and that the defendant was not notified in writing of the omission of said table-screen or screen partition and did not consent thereto, then, under the pleadings in this case the verdict must be for the defendant. (*Refused.*)

*Defendant's 19th Prayer.*—If the Court shall find that after the execution and delivery of the bond sued upon in this case, and before any refusal or neglect of the Clarion Concrete Construction Company to continue and complete the work called for in its contract with the plaintiff mentioned in said bond, a dispute arose between the plaintiff and said company, as to whether said company under its said contract with the plaintiff, was bound to construct a certain concrete ceiling, and that the said company wrote to the plaintiff the letter dated February 6th, 1907, which is in evidence, proposing to submit said dispute to arbitration, and that the plaintiff upon receipt of said letter thereupon, in reply thereto, stated to representatives of said company that he would submit said dispute to arbitration accordingly as proposed, then under the pleadings in this case the verdict must be for the defendant; even though the Court may further find that the said Clarion Concrete Construction Company thereafter withdrew its said offer to arbitrate, and even though such withdrawal was acquiesced in by the plaintiff. (*Refused.*)

*Defendant's 3rd Prayer as Modified.*—The defendant prays the Court to instruct itself, sitting as a jury, that if it finds from the evidence in this case that immediately after the

defendant was notified of the alleged failure and default of the said Clarion Concrete Construction Company to complete the work under its said contract with the plaintiff, the defendant offered to sublet or complete the same so far as to fully perform and complete all the work specified in the clause of the said contract, which reads as follows: "Columns, beams, floor and roof slabs, stairs, skylight sides, concrete foundations, concrete underfloors, top finish, asphalt under cells, cement floor finish at stair corridor, safety treads on stairs, all in the New Female Dormitory of the Maryland Penitentiary, as shown on the drawings and described on the specifications prepared by Charles M. Anderson, architect;" but the said plaintiff refused to accept such performance on the part of the defendant, unless the defendant would also agree to construct a certain concrete ceiling in the said Female Dormitory, then, under the pleadings in the case, the verdict must be for the defendant, *unless the Court, sitting as a jury, should find the meaning of the words "roof slabs," as shown on drawings and described in specifications, to be as set forth in the Court's first instruction. (Granted as modified by the Court's adding thereto the words in italics.)*

*Defendant's 11th Prayer as Modified.*—If the Court, sitting as a jury, shall find from the evidence that the third payment mentioned in the contract dated Sept. 18th, 1906, between the plaintiff and the Clarion Concrete Construction Company, which is in evidence, was made on the 28th day of November, 1906; and that the third reinforced floor mentioned in said contract was not *substantially* put in place by said Clarion Concrete Construction Company until the 21st day of January, 1907; and that no claim for any allowance for such delay was presented in writing to Charles M. Anderson, architect, by said Clarion Concrete Construction Company on the ground that the same was due to the act, neglect or default of the plaintiff or of said architect or of any other contractor employed by the plaintiff upon the work at the Maryland Penitentiary, or by any damage caused by fire or other casualty for which said concrete company was not re-

sponsible under said contract (and there is no evidence legally sufficient to prove any such presentation of written claim to said architect); and that such delay as it occurred came to the knowledge of the plaintiff or of his foreman authorized to oversee the said work; and if the Court shall further find from the evidence that prior to the 5th day of January, 1907, the said Clarion Concrete Construction Company failed *for such a substantial period of time as to be unreasonable under the circumstances* to have a competent man in charge of the work under its said contract with the plaintiff, and put concrete into the moulds before the moulds were plumbed and lined up and before they were sufficiently propped up to prevent the mould from swagging, and that putting the concrete into moulds in such a manner was improper construction, *and not a matter which was reasonably to be expected in constructing buildings of this kind, and which could be remedied at trifling trouble and expense and was in fact so remedied;* and that such failure of said Clarion Concrete Construction Company to have a competent man in charge of said work and the other acts on the part of the Clarion Concrete Construction Company hereinabove mentioned came to the knowledge of the plaintiff on or before the 5th day of January, 1907; and if the Court shall further find from the evidence that prior to the 9th day of January, 1907, a partition at the east end of the Chapel Wing of the addition to the Maryland Penitentiary mentioned in said contract, part of the work called for by said contract, bulged out of plumb, so that the same would have to be trimmed to make a plumb and parallel wall in thickness, according to the plans and specifications prepared by said architect and referred to in said contract, and that such bulging was caused by the spreading of the mould because the mould was not properly stayed by said Clarion Concrete Construction Company, and that all of said facts came to the knowledge of the plaintiff on or before the 9th day of January, 1907, *and were substantial matters and not merely matters which were reasonably to be expected in constructing buildings of this kind and which could be reme-*

*died at trifling trouble and expense, and were in fact so reme-
died;* and that prior to said 9th day of January, 1907, the
plaintiff by his agents called the attention of the representa-
tives of the Clarion Concrete Construction Company to the
said bulging of said partition, and that the said Clarion Con-
crete Construction Company had promised to attend to the
same, but had not, up to said 9th day of January, 1907, rem-
edied said defect, and that the plaintiff prior to said 9th
day of January knew of said facts; and if the Court shall fur-
ther find from the evidence that on or before the 9th day
of January, 1907, the other defects in the work of said Clar-
ion Concrete Construction Company under its said contract
with the plaintiff complained of in the letter from the plain-
tiff to said company dated January 9th, 1907, which is in
evidence, came to the knowledge of the plaintiff; and if the
Court shall further find from the evidence that on or before
the 11th day of January, 1907, the rods, in respect to the
columns from 9 to 16 on the north wing of said addition to
said penitentiary, were run up too high, so that they would
have to be cut off in order to make connections in the proper
height according to the said plans and specifications of said
architect; *and that this was a substantial matter and not a
matter which was reasonably to be expected in the construc-
tion of buildings of this kind and which could be remedied
at trifling trouble and expense, and was in fact so remedied;*
and that on or before the 11th day of January, 1907, the
Clarion Concrete Construction Company had been ordered
by said architect to make said change, but had neglected or
refused so to do, and had in consequence been obliged by him
to stop work on that part of this work until such correction
should be made, and that all of said facts came to the knowl-
edge of the plaintiff on or before January 11th, 1907, and if
no notice in writing of any of said facts was given to the
defendant or its president at its New York City office until
the plaintiff's letter dated Feb. 4th, 1904, which is in evi-
dence, then, under the pleadings in this case, the verdict must
be for the defendant; *but if upon the contrary, the said Court,*

*sitting as a jury, shall find from the evidence that all these matters above set forth were of trifling importance and reasonably to be expected in the construction of a large building, and that neither all of them nor any of them were or was calculated to arouse the apprehension of a reasonably prudent man that the contract would not be fulfilled in other material respects, then the defendant is not entitled to a verdict by reason of any act or omission of the plaintiff in this prayer set forth.* (*Granted as modified by the Court's adding thereto the words in italics.*)

*Defendant's 20th Prayer as Modified.*—If the Court, sitting as a jury, shall find that on or before January 5th, 1907, the Clarion Concrete Construction Company in and about work at the New Female Dormitory of the Maryland Penitentiary, under the contract between said company and the plaintiff, which is in evidence, committed acts which were likely to result in *substantial* loss for which the defendant would be liable under the bond which is sued upon in this case, and that on or before the 5th day of January, 1907, the occurrence of said acts came to the knowledge of the plaintiff, and that the defendant was not notified of said acts before the receipt in New York of a letter addressed by the plaintiff to the defendant's New York office and posted by the plaintiff in Baltimore on the 4th day of February, 1907, then, under the pleadings in this case, the verdict must be for the defendant. (*Granted as amended by the Court's adding thereto the words in italics.*)

The Court also granted at its own instance the following two instructions:

I. The Court finds as matter of law that the words "roof slabs" * * * as shown on the drawings and described in specifications referred to compose a technical term.

The Court further rules as a matter of law that if it, sitting as a jury, shall find from the evidence that said technical term—when used in a contract for the erection of a building where the specifications referred to require that the roof and ceiling should be constructed of reinforced concrete by "mon-

olithic construction," the ceiling being attached to and dependent from the roof—means to persons skilled in the trade in which said technical term is used "the roof together with the ceiling so attached and dependent," then, by the true construction of the contract offered in evidence between the Clarion Concrete Company and the plaintiff the said Clarion Concrete Company was bound thereunder to erect the ceiling so attached to and dependent upon the roof as called for in the specifications referred to in said contract.

II. The Court finds as a matter of law that there is no legally sufficient evidence to be submitted to itself, sitting as a jury, that the alleged alterations mentioned in the defendant's 8th and 9th pleas in the contract and bond, in said pleas alluded to, were validly made, and the verdict of the Court, sitting as a jury, must be for the plaintiff upon the issue joined to the plaintiff's second replication to the defendant's 8th and 9th pleas.

The cause was argued before Boyd, C. J., Briscoe, Schmucker, Thomas, Worthington and Henry, JJ.

*Horace S. Whitman* and *Arthur W. Machen Jr.,* for the appellant.

*Vernon Cook* and *J. Morfit Mullen* (with whom were *Gans & Haman* on the brief), for the appellee.

Schmucker, J., delivered the opinion of the Court.

The appeal in this case was taken from a judgment in favor of the appellee in a suit on a bond given by the appellant as surety for the Clarion Concrete Construction Company.

That company, in September, 1906, made a contract with John Waters, a well-known builder in Baltimore City, to furnish the material and do the work for the reinforced concrete construction required in the erection of a dormitory at the penitentiary, which he had undertaken to build for the State

of Maryland.  The bond sued on was given by the appellant
to secure the performance of that contract.

In July, 1907, Waters instituted the present suit in the
Superior Court of Baltimore City on the bond for an alleged
failure of the concrete company to fully perform its contract
with him.  The case having been tried before the Court with-
out a jury, resulted in a judgment for the plaintiff for
$1,655.67, from which the appeal was taken.

The pleadings in the case are voluminous and intricate,
covering more than twenty pages of the record, and nineteen
issues were joined during their progress; but, as the case was
finally tried on its merits, we can dispose of it here by a con-
sideration of the questions raised by the bills of exception
without reviewing the pleadings.  The record contains twen-
ty-three bills of exceptions, of which the last relates to the
Court's action on the prayers and instructions to the jury, and
all of the others refer to rulings on evidence.  At the close of
the case the plaintiff ordered two prayers and the defendant
offered twenty-two.  They will be set out in the report of the
case by the Reporter.  The Court refused the plaintiff's first
prayer and granted his second one, and refused all of the
defendant's prayers in the form in which they were offered,
but granted the third, eleventh and twentieth after modify-
ing them.  The Court also gave two instructions on the law
at its own instance.  An examination of the exceptions makes
it apparent that the questions raised by them may be conven-
iently disposed of in classes or groups, in the order adopted
on the appellant's brief in presenting the several propositions
upon which it relied to defeat the action in the Court below
and on which it now insists as grounds of reversal.  Those
defenses relate:

(1) To the construction of the contract secured by the
bond sued on.

(2) Failure of plaintiff to notify defendant of acts of the
contractor likely to result in loss.

(3) Effect of alleged alterations in contract without de-
fendant's consent.

(4) To various other questions raised by the 1st, 5th, 12th, 13th and 15th bills of exceptions and the plaintiff's 2nd prayer.

The appellant's main contention on the construction of the contract is that it did not require the Concrete Company to erect the ceiling on the upper story of the building. As against this view the appellee insists that the expression "roof slabs" found in the contract was intended to include the ceiling under the roof and fastened to it. He further insists that, upon a fair interpretation of the entire contract, and the architect's drawings and specifications therein referred to, it is plain that the reinforced concrete work contracted for by the Concrete Company was intended to include the ceiling in question.

The first article of the contract is as follows:

"Article 1. The contractor shall and will provide all the materials and perform all the work for the reinforced concrete construction; *i. e.,* columns, beams, floor and roof slabs, skylight sides, concrete foundations, concrete under floors, top finish, asphalt under cells, cement floor finish at stair corridor, safety treads on stairs, all in the New Female Dormitory of the Maryland Penitentiary, as shown on the drawings and described in the specifications prepared by Charles M. Anderson, architect, which drawings and specifications are identified by the signature of the parties hereto, and become hereby a part of this contract."

The architect's specifications referred to in Article 1 provide, under the head of *Reinforced Concrete,* that: "The floors, beams and columns supporting same, ceilings, roofs and stairways and interior partitions throughout, as shown on plans, to be of reinforced concrete." They also require that the work should be of "monolithic construction."

It is further provided in the contract that the work is to be done under the direction of said architect, and that his decision as to the meaning of the drawings and specifications shall be final; also that no alterations shall be made except upon his written order, the amount to be paid by the

owner or allowed by the contractor by virtue of such altera-
tion to be stated in such order.   There is also a provision that
if the contractor should not at any time furnish a sufficiency
of skilled workmen or materials of proper quality, or should
fail to diligently prosecute the work or to perform any of
the stipulations of the contract, then, upon the certification
by the architect of such neglect or failure, the owner may,
after three days' written notice to the contractor, provide any
such labor or materials and deduct the cost thereof from any
money then due or thereafter to become due, and may also,
with the approval of the architect, terminate the employment
of the contractor and take possession of the premises, with
the material, tools and appliances thereon, and finish the work
at the expense of the contractor.   If, in such event, the ex-
pense of the completion as audited and certified by the archi-
tect shall exceed the unpaid balance of the contract price, the
contractor shall pay the difference to the owner, and such cer-
tificate of the arcihtect shall be conclusive upon the parties.

The bond of the appellant, on which the suit was brought,
is conditioned on the faithful performance of the contract.   It
also provides that the surety shall be notified in writing of
any act on the part of the principal or its agents or employees,
which may involve a loss, immediately after its occurrence,
and must be similarly notified of, and its written consent
secured to, any change or alteration made in the original
plans or specifications by the obligee.

The contract and bond having been executed, the Concrete
Company began the execution of the work contracted for and
had completed the greater portion of it by February 4th,
1907, when it took the position, in a letter to the appellee,
that it was not compelled under its contract to construct the
ceiling over the upper floor of the building.   The appellee
stoutly insisting that the contract did call for the construc-
tion of that ceiling, the two parties expressed a willingness to
have the dispute between them settled by arbitration but as
only one of them selected an arbitrator and neither of them

took further steps in that direction no settlement by that means occurred.

On March 28th, 1907, the appellee formally notified the Concrete Company to proceed with the work under the contract which it failed to do. It was on the same day put into the hands of Horace S. Whitman as receiver, on a suit of one of its creditors, by a decree of Circuit Court No. 2 of Baltimore City. On April 2d, 1907, the appellee notified the appellant that the Concrete Company was not proceeding with its work and that it denied its obligation to construct the ceiling. In response to this notice the receiver, Mr. Whitman, who was also counsel for the appellant, offered to complete the work without the ceiling for which he refused to accept any responsibity. The appellee thereupon, having first notified Mr. Whitman of his purpose, proceeded to have the work completed himself through the agency of other subcontractors. After the work had been finished the architect certified that the cost of its completion by the appellee was $7,995.67, which exceeded the balance of the money not paid to the Concrete Company under its contract by $1,655.67, for which amount the judgment was obtained.

Mention will be made hereafter of certain acts of the Concrete Company likely to result in loss; of which the appellant insists that it did not receive prompt notice, and also of an alleged alteration of the contract without the appellant's consent, which it contends discharged the bond.

We will now consider whether, under a proper construction of the contract, the Concrete Company was bound to construct the disputed ceiling. We agree with the appellant that the provision in the contract that the architect's decision as to the true construction and meaning of the *drawings* and *specifications* shall be final, does not take from the Court and confer upon the architect the power to construe the *contract* itself. The law is clear that the common right of resort to the Courts for the determination of the rights of parties or the settlement of disputes between them will not be taken away by inference or implication or anything short of a dis-

tinct agreement to waive it. No such agreement is found in the contract before us which in terms limits the architect's authority to determining the meaning and construction of the drawings and specifications prepared by him but does not submit to his decision the contract rights of the parties. *Smith & Sons* v. *Jewell,* 104 Md. 279 *et seq.; Isaac* v. *Dawson,* 70 N. Y. App. Div. 232, affirmed in 174 N. Y. 537; *Baltimore* v. *Schaub Bros.,* 96 Md. 554; *Lauman* v. *Young,* 31 Pa. St. 306; *Gubbins* v. *Lautenschlager,* 74 F. R. 167.

The question before us is not one of the construction of the drawings and specifications under which the contract is to be performed, although the ascertainment of their true meaning may afford some assistance in its solution. It is a question of the construction of the contract itself to determine whether, under its provisions, the Concrete Company was under any obligation at all to construct the disputed ceiling.

It is familiar law that the construction of written documents is ordinarily one of law for the Court, and if their terms are not technical, ambiguous or obscure parol evidence cannot be resorted to to aid in the construction. *Roberts* v. *Bonaparte,* 73 Md. 199; *Woods* v. *Williams,* 16 Md. 251; *Cecil Bank* v. *Farmers' Bank,* 22 Md. 155; *Needy* v. *Middlekauff,* 102 Md. 183. But where technical terms are used in a written contract parol testimony may be introduced to explain their meaning which will then become a question for the jury to whom "the Court will give conditional instructions as to the effect of the contract according as they may find the meaning of such terms to be." *Roberts* v. *Bonaparte, supra; Leftwitch* v. *Royal Ins. Co.,* 91 Md. 612; *Badart* v. *Foulon,* 80 Md. 589. In the last mentioned case this Court in its opinion quoted with approval, from the opinion of Baron Parke in *Shore* v. *Wilson,* 9 Clark & Finnelly, 355, the following statement. "In the first place there is no doubt that not only where the language of the instrument is such as the Court does not understand, it is competent to receive evidence of the proper meaning of that language as

when it was written in a foreign tongue; but it is also competent where technical words or peculiar terms, or indeed any expressions are used which at the time the instrument was written had acquired an appropriate meaning, either generally or by local usage or amongst particular classes."

It is equally familiar law, recognized by the cases already cited, that in the construction of contracts Courts look to the language employed, the subject-matter and the surrounding circumstances of the parties who made them so as to carry out their true intent.

Applying these principles to the present case, we have first, in point of time, a contract between Mr. Waters and the State for the erection of a penitentiary dormitory according to the drawings and specifications of a designated architect. Those specifications are found to contain the distinct statement: "The floors and beams and columns supporting the same, ceilings, roofs and stairways, and interior partitions throughout to be of reinforced concrete." We next have the sub-contract, now under consideration, between Mr. Waters and the Concrete Company by which the latter undertakes to "provide all of the materials and perform all of the work for the reinforced concrete construction" in the dormitory as shown on the drawings and described on the specifications already mentioned. The items constituting the concrete construction contracted for are not enumerated in precisely the same language in the sub-contract as in the specifications. In the enumeration in the specifications the word "ceilings" is used as well as "floors" and "roofs," while in that contained in the contract we find no mention of ceilings nor any separate mention of roofs, but two expressions, "floor slabs," and "roof slabs," appear there, that are not found in the enumeration contained in the specifications.

If from that state of facts it is to be inferred that the Concrete Company was not bound to construct the ceiling on the fourth floor, it would equally follow that it was not bound to construct ceilings on the first, second or third floors, unless some of the expressions, descriptive of the work to be done,

employed in the contract be held to include the ceilings on
those three floors.  In view of the violence of the assumption
that the contract did not intend to provide for the construc-
tion of any ceilings at all, and also in view of the subject-
matter of the contract and the surrounding circumstances,
we think that the learned Judge below correctly permitted
the appellee to introduce evidence to show that in concrete
construction the expressions "floor slab" and "roof slab" are
respectively used in a technical or peculiar sense to designate
not merely the floor or roof, but also the ceiling below it, as
the roof or floor is constructed at the same time as the ceiling
under it, and they together form one integral portion of the
entire building.  We are convinced that those expressions
were used in a technical or peculiar sense in the present case
from the testimony of Mr. Waters, the builder; Mr. Ander-
son, the architect, and Mr. Barre, the manager of the Ar-
mored Concrete Company, all of whom, from the nature of
their occupations, were familiar with architectural drawings
and specifications.

The appellant did not deny that the expression "floor slab"
in the contract was intended to describe the concrete structure
which formed at once the floor to one story and the ceiling
to the story below it, but he contended that the expression
"roof slab" should not be held to describe both the roof and
the ceiling below it, because the two, although rigidly con-
nected with each other, were in fact separated by an air space
of several feet, and could be separately constructed.  That
contention presented a question of the meaning of the tech-
nical expression "roof slab," as used in the contract, and was
one for the jury or for the Court sitting as a jury.

The Court's first instruction which covered this branch of
the case was as follows:

"The Court finds as matter of law that the words 'roof
slabs' * * * as shown on the drawings and described in
the specifications referred to compose a technical term."

"The Court further rules as a matter of law that if it, sit-
ting as a jury, shall find from the evidence that said technical

term, when used in a contract for the erection of a building where the specifications referred to require that the roof and ceiling should be constructed of reinforced concrete by "monolithic construction," the ceiling being attached to and dependent from the roof, means to persons skilled in the trade in which said technical term is used "the roof, together with the ceiling so attached and dependent," then by the true construction of the contract offered in evidence between the Clarion Concrete Company and the plaintiff, the said Clarion Concrete Company, was bound thereunder to erect the ceiling so attached to and dependent upon the roof as called for in the specifications referred to in said contract." We find no error in the granting of that instruction.

The contention of the appellant is that the contract in this case falls within the principle that where general words are followed by a special clause the latter will limit and restrain their operation, which is asserted in *Needy* v. *Middlekauff, supra, and Mims* v. *Armstrong,* 31 Md. 87. In the present case we not only have general words of description of the work covered by the contract, followed by a brief mention of its several items, but have also incorporated into the contract, by special reference thereto, a set of drawings and specifications which more fully show the purpose and particulars of the work. The intention of the parties to the contract must be gathered from a consideration of the contract and the drawings and specifications, taken together in the light of the purpose which their contents show they were intended to serve.

What we have said in reference to the Court's first instruction also disposes of questions raised by the defendant's 1st, 2nd, 3rd, 4th and 5th prayers, and its 2nd, 3rd, 4th, 8th, 9th, 10th, 14th and 16th to 22nd exceptions to rulings on evidence.

The second defense relied on by the appellant is an alleged violation of one of the provisions of the bond sued on, consisting of a failure of the appellee to give it notice of acts of the Concrete Company likely to result in loss for which the surety would be responsible. Matters connected with this

defense are presented by the 11th bill of exceptions and the defendant's 1st, 11th, 12th, 13th, 14th and 20th prayers, as well as by the Court's own instructions and its modification of the 11th and 20th prayers and the overruling of the defendant's special exceptions.

It is not disputed that the appellee gave immediate written notice to the appellant of the Concrete Company's refusal on Feby. 4th, 1907, to construct the disputed ceiling and of the appointment of the receiver for that company on March 28th, 1907, and also of the attachment laid in his hands to affect any money payable to the company under its contract. The other acts of the company likely to involve loss of which the appellant complains that it did not receive due notice, consist of delays in the progress of the work, improper workmanship and failure to comply with specifications and the cessation of the work on or about Jany. 11th, 1907. Although a surety is not liable beyond the strict terms of its contract, that contract, like all others, must receive a rational construction which will accomplish the real purpose which its authors had in view in making it. Its "language has the same significance and its meaning must be ascertained by the same rules of law when it is found in the contract of a surety as when it appears in other agreements." *Am. Bonding Co.* v. *Pueblo Investing Co.,* 150 F. R. 17; *National Surety Co.* v. *U. S.,* 63 C. C. A. 512; *U. S. Fidelity Co.* v. *Woodson Co.,* 145 F. R. 144.

It may safely be said to be a matter of common knowledge, certainly one which a company like the appellant, which makes a business of guaranteeing the performance of contracts of builders and others, ought to have known, that in the execution of every building contract of any magnitude or importance some delays, cessations of work and slight deviations from the plans and specifications are bound to occur. In a sense it is true that every such occurrence may result in loss to the surety, but it is irrational to suppose that the parties to the contract of suretyship contemplated a destruction of the contract and the consequent loss of the protection it was

intended to afford upon the happening of any such occurrence
of a slight and immaterial character. Without noticing in
detail all of the acts disclosed by this record which might
have resulted in loss to the surety, but did not do so, we may
say that in our view they are not such as to call for or justify
an application to them with strict severity of the provision
of the bond relating to notice to the surety. That clause is in
effect a forfeiture clause, and therefore belongs to a class of
provisions of which the Courts are not disposed to make a
rigid application to circumstances not of the essence of the
transaction. *Monahan* v. *Mut. Ins. Co.,* 103 Md. 158-9, and
cases there cited.

The contention of appellant's counsel that the failure to
promptly notify the surety of the cessation of work under the
contract about Jany. 11th, 1907, deserves especial notice.
Treating that as having been a final abandonment of the work
by the company, he insists that the failure to promptly notify
the surety of the fact prevented it from taking possession of
the work, as it had a right to do under the terms of the bond,
and receiving all subsequent payments under the contract, in-
cluding the sum of $2,000 afterwards paid to the company
or for its account. That contention involves a distinct issue of
fact; *i. e.,* whether the plaintiff had any reason to believe that
the work was finally abandoned on Jany. 11th. There is evi-
dence in the record tending to show that although Mr. Waters
on or about that date stopped the employees of the company
from doing *some work,* because of the manner in which it was
being done, he allowed them the privilege of correcting their
erroneous method; also that after that date the completion of
the concrete work was delayed because the other portions of
the work on the building were not sufficiently advanced to
permit the resumption of the concrete construction, and that
when the building was ready for the concrete construction of
the roof Mr. Waters notified the company of that fact, and
promptly informed appellant that he had done so, and that
the receiver of the company replied that he was prepared to
complete the contract by constructing the roof, but refused to

construct the disputed ceiling, and that it was the controversy over the obligation to construct the ceiling and the state of the other work on the building rather than an abandonment of the contract by the company which delayed the completion of the work. A letter appears in the record written by the Concrete Company to Mr. Waters on Feby. 4th informing him that they were forced to suspend work on the building because the stone walls had not reached a sufficient height to enable them to proceed with the only concrete work which then remained to be done.

In the recent case of the *United Surety Co.* v. *Summers, ante,* page 95, we had occasion to pass upon a state of facts involving the same principle as that now under consideration. That was a suit on a bond for the faithful performance of a building contract, and the bond contained the identical provision found in the present one, requiring prompt notice to be given to the surety of any act on the part of the principal likely to result in loss to the surety. In that case the builder omitted to construct a stairway, called for by the contract, between two floors of the building, although he was paid for it, No notice was given to the surety of the omission or the payment, and it relied upon the failure to give the notice as one of its defenses to a suit on the bond. We there held that the surety was not released by the failure of the obligee to give it the notice to which it claimed that it was entitled.

The third defense set up by the appellant is based upon an alleged alteration of the contract without its consent. The clause in the bond on that subject is: "The said surety must be notified in writing, and its written consent secured to, any change or alterations made in the original plans or specifications made by the obligee." The alleged alteration relied on in support of this defense was that, during the progress of the reinforced concrete work a screen partition in the dining room, called for in the specifications, was omitted under a verbal agreement, in consideration of which the Concrete Company agreed to allow Mr. Waters a credit of $30 on the contract price. It is difficult to see how the appellant as surety

was injured by that transaction, and in view of the proportion which the sum of $30, which it involved, is to the whole contract price of $13,506, it might well be regarded as falling within the operation of the principle recognized by many authorities, that slight and immaterial changes in a contract which do not change its legal import will not release a surety. 27 *A. and E. Encyc.* 495-6; *Anderson* v. *Ballinger,* 4 L. R. A. 680; *American Bonding Co.* v. *Pueblo Investing Co., supra;* 2 *Cyc.* 217-18; *Leppert* v. *U. S. Fidelity Company et al.,* 101 Md. 75.

The learned Judge below, in rejecting this defense, relied especially upon the fact that the alleged change in the contract never was made in a valid or legally effectual manner, and consequently there was no alteration in the plans or specifications within the meaning of the bond. By the terms of the contract itself no such alteration could be made "except upon the written order of the architect," who was to fix the sum to be paid to or allowed by the contractor therefor, subject to the right of the parties to resort to arbitration if dissatisfied with his decision. The alleged alteration was not so made. The appellant in seeking to escape liability by a strict adhesion to the letter of its bond could not complain of the application by the Court of a similar strictness to the construction of the clause of the contract prescribing the method which must be adopted in order to make a valid change or alteration in its terms. We find no error in the action of the Court below upon the portions of the record applicable to that defense which are the 6th and 7th bills of exception and the defendant's 1st, 7th, 8th, 9th, 10th, 15th, 16th, 17th, 18th and 19th prayers and the Court's 2nd instruction.

The appellant also relied by way of defense on the fact that the drawings and specifications prepared by Mr. Anderson the architect and referred to in the contract were not signed by the contracting parties. We are unable to recognize any merit in that defense. The contract itself was signed by the parties and there is no question as to the identity of the

drawings and specifications to which it refers. They were recognized and adopted by all parties to the transaction as controlling the performance of the work contracted for and their conduct in that respect amounted to a waiver of the formality of signing. Furthermore the drawings and specifications were relied on, as forming part of the contract, by the appellant in its main defense to the present action which was that they did not require the Concrete Company to construct the ceiling to the upper story to the dormitory. Under these circumstances it cannot now be heard to call in question their identity or complain of their admission in evidence. The features of this case to which we have adverted call with especial force for the application to it of the familiar doctrine that a surety is estopped to deny the facts recited in his obligation, which is well supported by the decisions in this State and elsewhere. 27 *A. & E. Encyc.*, 447, 466, 467; 16 *Cyc.*, 702; *State* v. *Horner,* 34 Md. 573; *Hamilton* v. *State,* 32 Md. 352; *Billingsley* v. *State,* 14 Md. 369.

Without referring in detail to the other questions relied on by the appellant as grounds for reversal, all of which are more or less technical in their nature, we deem it sufficient to say that the record discloses no reversible error in the disposition of those questions made by the learned Judge before whom the case was tried below.

In dealing with the construction of the bond in this case and of the contract the faithful performance of which it was intended to secure, we have kept in view the attitude assumed by us in several recent cases of a similar character especially the case of *State use of Smith* v. *Turner,* 101 Md. 584, where we said: "While the liability of the surety is not to be enlarged by mere implication, yet in the effort to ascertain what these duties are, a reasonable construction is to be given to the language of the statutes dealing with these duties, and the construction is not to be strained in order to effect a release of a surety, whose obligation is deliberately entered into, as a commerical transaction, and with the exclusive view to the pecuniary profit resulting from it."

As a result of the conclusions which we have reached from a careful examination of the issues presented by the Record we will affirm the judgment appealed from.

*Judgment affirmed with costs.*