281 Md. 463 (1977)
379 A.2d 1031
MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
v.
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, COUNCIL NO. 67 AND LOCAL NO. 44 ET AL.
[No. 50, September Term, 1977.]
Court of Appeals of Maryland.
Order June 29, 1977.
Opinion Filed December 5, 1977.
Per Curiam Order June 29, 1977.

*464 PER CURIAM ORDER:
The Baltimore City Court having by its Order dated June 13, 1977, entered upon appellees' petition for a declaratory decree and injunctive relief, decreed "that the Board of Estimates of Baltimore City has the contractual duty and obligation, in accordance with each Memorandum of Understanding entered into with the respective Plaintiff Employee Organizations, to include appropriations for the payment of annual and longevity increments in the proposed Ordinance of Estimates for fiscal 1978 and to recommend to the City Council the approval of said appropriations";
The Baltimore City Court having further decreed, by its said Order, that an affirmative injunction be issued requiring "that the Board of Estimates of Baltimore City submit forthwith to the City Council an amended Ordinance of Estimates which contains appropriations for annual and longevity incremental payments in accordance with the terms of each Memorandum of Understanding entered into between the Board of Estimates and the respective Plaintiff Employee Organizations";
And it appearing to the Court, after consideration of briefs filed by the parties and oral argument heard, that for reasons to be stated in an opinion to be filed later the appellees were not entitled to the declaratory or injunctive relief prayed in their petition and granted by the Baltimore City Court.
It is, therefore, this 29th day of June, 1977,
ORDERED, by the Court of Appeals of Maryland, that the Order of the Baltimore City Court dated June 13, 1977 be, and it is hereby, vacated, and the petition for declaratory and injunctive relief is hereby dismissed, with costs; and it is further
ORDERED that the mandate shall issue forthwith.
The cause was argued before MURPHY, C.J., and SINGLEY,[*] SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.
*465 Ambrose T. Hartman, Deputy City Solicitor, with whom were Benjamin L. Brown, City Solicitor, and William Hughes, Associate City Solicitor, on the brief, for appellants.
William H. Engelman and Herbert J. Belgrad, with whom were Charles B. Heyman and Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A. on the brief, for appellees.
ELDRIDGE, J., delivered the opinion of the Court.
Several labor organizations representing employees of the City of Baltimore, and several individual members of those organizations, instituted this action for declaratory and injunctive relief in the Baltimore City Court, seeking to enforce certain provisions of collective bargaining agreements between the labor organizations and the Board of Estimates of Baltimore City. On the basis of these agreements, the Baltimore City Court found that the Board of Estimates had a "contractual duty and obligation" to include in the proposed Ordinance of Estimates, which is the proposed budget that the Board is required to submit to the City Council, appropriations for the payment of annual step-in-grade salary and longevity increments to employees covered by the agreement, and that the Board had failed to do so in the ordinance for fiscal year 1977-1978. The court issued an injunction requiring the Board of Estimates to submit to the City Council an amended Ordinance of Estimates containing these appropriations.
The City appealed from the judgment and order to the Court of Special Appeals, and we granted a writ of certiorari prior to any proceedings in that court. In order that this question could be resolved prior to final action by the City Council on the budget for the fiscal year beginning July 1, 1977, we advanced this case for argument. Following oral argument, we filed a per curiam order on June 29, 1977, which, after reciting that the plaintiffs were not entitled to the declaratory or injunctive relief requested, vacated the order of the Baltimore City Court. We now state the reasons for the order.
The basic facts of this case are undisputed. The plaintiff *466 employee organizations[1] are all recognized by the City as exclusive negotiating representatives for certain employees of the City of Baltimore pursuant to the provisions of the Municipal Employee Relations Ordinance (Ordinance 251 of 1968 as amended, Baltimore City Code (1966), Art. I, §§ 110-126 (a)). Following negotiations in 1976, the Board of Estimates and each union executed a "Memorandum of Understanding," as purportedly authorized by the Employee Relations Ordinance, defining the rights and obligations of the parties in respect to certain conditions of employment. The memoranda were negotiated for the two year period from July 1, 1976, to June 30, 1978. The memoranda were ratified by the unions' members during July 1976, and they were formally signed by the unions and the Board of Estimates in August and September 1976, to be effective retroactively as of July 1, 1976.
Although each memorandum covers a broad spectrum of matters relating to conditions of employment, the only provisions of the memoranda at issue here are those relating to employee compensation. Each memorandum provides that employees covered shall receive across the board percentage pay raises for each of the two years covered by the memorandum. In addition to the pay raises, each memorandum refers to the payment of "step" increments and longevity increments.[2] Some of the memoranda also have attached salary schedules reflecting the payment of these *467 increments within the various employee classifications represented by the particular bargaining unit. Additionally, each memorandum has a preamble which states:
"To the extent that implementation of these points requires action by the City Council, this memorandum will serve as a request and recommendation to such body that it be so implemented."
For the fiscal year 1976-1977, the Board of Estimates included in the Ordinance of Estimates which it submitted to the City Council appropriations sufficient to pay both the pay raises and the "step" increments and the longevity increments. However, the proposed Ordinance of Estimates submitted by the Board of Estimates for fiscal year 1977-1978 did not include appropriations for payment of the annual increments but only appropriations sufficient for the percentage pay increases included in the memoranda of understanding. Because, under the Baltimore City Charter, the City Council may neither increase any appropriation in the proposed Ordinance of Estimates nor include any new appropriations, the action of the Board of Estimates precluded the payment of annual increments to city employees. In a letter to the City Council which accompanied the Ordinance of Estimates, the Mayor noted several economies made in the budget because of the City's financial condition. The letter explained that it was the Board's policy in the past that payment of the increments was conditioned upon the City's fiscal condition, and that, "[i]n order to avoid a greater tax increase than [is] absolutely essential," the Board was withholding the payment of the increments.
The unions' position is that the Board of Estimates entered into binding two year agreements with the employees, and that these agreements were authorized by the City's Employee Relations Ordinance.[3] The unions contend that the agreements obligated the Board to include in the Ordinance of Estimates prepared by the Board for each of the two years *468 covered by the memoranda appropriations sufficient for payment of both the pay raises and the annual increments. The unions do not deny that ordinarily, the Board of Estimates may, in its discretion, choose not to pay the increments. However, they argue that the Board, by entering into the two year contracts in order to project labor costs for that period, effectively exercised its discretion and determined that continued payment of the increments would be more beneficial than uncertainty as to labor costs in future years. Moreover, the unions' argument continues, if payment of the increments would impose too great a financial burden on the City, as the Board of Estimates now claims, the City Council, in its discretion, could delete appropriations for the increments from the Ordinance of Estimates. The unions agree that the memoranda of understanding are not in any way binding on the City Council.
The City, on the other hand, denies that the Board of Estimates is under any contractual obligation to include appropriations for the payment of increments in the Ordinance of Estimates, arguing that, as a matter of contract interpretation, the memoranda do not contain any clear and unambiguous promises to pay the increases. Alternatively, the City argues that under the terms of the memoranda, it was the intention of the parties that any such promises be conditioned upon the Board's discretion to withhold payment of increments in any given year for financial reasons. Finally, the City contends that if the terms of the memoranda required the Board of Estimates to include appropriations for the increments in the Ordinance of Estimates, the memoranda would be invalid to that extent, on the ground that a municipality "may not contract so as to deprive itself of powers conferred upon it" by its charter.
Before considering the dispute among the parties in this case, it would be helpful to review the role of the Board of Estimates in the appropriation process, as set forth in the Charter of Baltimore City. The City of Baltimore, like the State of Maryland, has what is commonly known as an *469 "executive budget system."[4] At the heart of the City's system is the Board of Estimates which is composed of the Mayor, the President of the City Council, the Comptroller, the City Solicitor, and the Director of Public Works. Charter, Art. VI, § 1. Under the City Charter, the Board of Estimates is vested with broad discretionary powers concerning the City's fiscal management. The Board is "responsible for formulating, determining, and executing the fiscal policy of the City...." Art. VI, § 2(a). Accordingly, it is required to submit to the City Council for each fiscal year a proposed Ordinance of Estimates, Art. VI, § 2(b). The proposed ordinance must contain "[e]stimates of appropriations needed for the operations of each municipal agency," estimates for appropriations for other purposes, and a separate listing of appropriations needed for capital improvements, Art. VI, §§ 2(c)(1), (2). Accompanying the proposed Ordinance of Estimates must be "[a] breakdown of the amounts stated for each ... purpose ... of each municipal agency," including information concerning "the compensation of every officer and salaried employee of the City," Art. VI, § 2(f)(1). The Board also must submit comparisons between the appropriations actually contained in the ordinance for each agency with the appropriation requested by the agency, as well as the amounts appropriated for the current fiscal year compared to the amounts expended in the prior year, Art. VI, § 2(f)(2). Detailed information as to the source of funding for the appropriations must be submitted, Art. VI, § 2(f)(3). And the Mayor must send to the Council a message "explaining the major emphasis and objectives of the City's budget for the next ensuing fiscal year." Art. VI, § 2(f)(6).
*470 The City Council has only limited powers in relation to the proposed Ordinance of Estimates. It "may reduce or eliminate any of the amounts fixed by the Board in the proposed Ordinance of Estimates...." However, the City Council does not have "the power to increase the amounts fixed by the Board or to insert any amount for any new purpose in the proposed Ordinance of Estimates," Art. VI, § 2(g). After passage of the Ordinance of Estimates by the City Council, the Board of Estimates must certify to the City Council the difference between the anticipated expenditures contained in the ordinance and expected revenues other than those from the property tax. The Board must then state a property tax rate sufficient to meet this difference, and the City Council must by ordinance set a property tax rate not less than that stated by the Board so as to insure a balanced budget, Art. VI, § 2(g). Once funds are appropriated, they may not be "diverted or used for any purpose other than that named in said ordinance," except under certain circumstances requiring the approval of the Board of Estimates, Art. VI, § 2(i).
In Baltimore City v. Gorter, 93 Md. 1, 13-14, 48 A. 445 (1901), after reviewing the powers and duties assigned to the Board of Estimates in the budget process under the City Charter, the Court concluded that
"it is quite obvious that it was the intention of the charter that the Board of Estimates should have a very important and controlling influence in operating the financial department of the City government. The amount of official influence and responsibility brought together in its makeup; the nature of the duties assigned to it; the clear and emphatic negation of power to the legislative department that might be inconsistent with, or might embarrass the exercise of functions assigned to it, are considerations that go to make this manifest. The evident object of the Board of Estimates as a feature of the Charter was to provide a more orderly administration of the finances of the City, to secure more deliberate and careful judgment as to *471 expenditure of the public money, and greater watchfulness over, and economy in making this expenditure; thereby avoiding, as far as practicable, unnecessary taxation and the accumulation of debt by reason of unsystematic methods."
It is the Board of Estimates which, under the organic law of the City, is charged with the responsibility of formulating and determining the fiscal policy of the City. It is the Board of Estimates which is initially required to review the financial status of the City on an annual basis and to determine, in its sole discretion, which items should be included in the City budget. And as made clear in Baltimore City v. Gorter, supra, if the Board determines, in its judgment, that an appropriation for a certain purpose should not be included in the budget, this determination is final, as the City Council is without power to include any new item in the Ordinance of Estimates. See also Liss v. Goodman, 224 Md. 173, 167 A.2d 123 (1961).
Consequently, under the Baltimore City Charter, the Board of Estimates plays a critical role in the appropriation process. The submission by the Board of Estimates to the City Council of the Ordinance of Estimates is not merely a request or a recommendation for an appropriation of funds. Instead, the Board finally determines the maximum appropriation for any particular purpose. The Board's submission of the Ordinance of Estimates is, therefore, an integral and major part of the law-making function.
Turning to the controversy in the instant case, we believe that, in light of the language of the memoranda entered into between the Board of Estimates and the unions, there is much force to the unions' argument that the Board attempted to bind itself to include in the Ordinance of Estimates sufficient appropriations for payment of the annual increments. However, we do not believe that the City's Municipal Employee Relations Ordinance authorized the Board to so bind itself by contract in the performance of the Board's fiscal duties under the City Charter.
The Baltimore City Municipal Employee Relations Ordinance includes in the Declaration of Policy in the first *472 section of the ordinance the following provision (Baltimore City Code, Art. I, § 110, emphasis supplied):
"Municipal agencies and employees and their representatives shall have a mutual obligation to endeavor in good faith to resolve grievances and differences relating to terms and conditions of employment with due regard for and subject to the provisions of applicable laws relating to personnel policies, including hiring, promotion, suspension, discharge, position classification and fixing of compensation and any and all other laws, ordinances and Charter provisions governing public employment and fiscal practices in the City of Baltimore."
Thus, the ordinance is made expressly subject to the City Charter provision governing public employment and fiscal practices. This would embrace the Charter provisions vesting in the Board of Estimates the duty of determining, according to the standard set forth in the Charter, the maximum limits of appropriations for particular purposes in the Ordinance of Estimates submitted to the City Council. Later, the Municipal Employee Relations Ordinance reiterates that "[a]ny memorandum of understanding reached between the employer and employee organization shall be subject to the provisions of the Charter..." (§ 114).
Section 118 of the Municipal Employee Relations Ordinance provides, inter alia, for "negotiations" between the employer and the employee representatives, including "meetings appropriately related to the budget-making process, and to reduce to a memorandum of understanding the matters agreed upon as a result of such negotiations...." Section 118 then goes on to provide (emphasis supplied):
"Negotiations between the employer and the employee organization shall be conducted on behalf of the employer by a committee to be named by the mayor, which committee shall include the labor commissioner, and on behalf of the employee organization designated as the exclusive negotiating *473 agent for the employees in the unit by two or more representatives of such employee organization. The chairman of the employer's negotiating team shall be named by the mayor."
The ordinance, therefore, does not appear to contemplate negotiations leading to memoranda of understanding entered into between the Board of Estimates and the unions, such as was done in the instant case. Instead, the ordinance contemplates negotiations and memoranda of understanding between a committee appointed by the mayor and the unions.
Finally, § 118 states (emphasis supplied):
"If after a reasonable period of negotiation over the terms of an agreement, a dispute exists between the employer and the certified employee organization or organizations with whom it is negotiating, or if no understanding has been reached within a reasonable period of time, but not later than March 1, prior to the final date for setting the municipal budget, it shall be deemed that an impasse has been reached...."
The negotiations and memoranda of understanding, therefore, are to be reached prior to the final date for setting the municipal budget, which is of course done on an annual basis. The memoranda in the present case, on the other hand, were entered into after July 1, 1976, were made effective retroactive to July 1, 1976, and were for two years.
Section 126 of the Municipal Employee Relations Ordinance, titled "Time Table," is quite significant. It provides (emphasis supplied):
"Regardless of the date upon which certification is issued to any employee organization, negotiations shall be held only between January 1 and March 1 of the following year and all memoranda of understanding reached as a result of such negotiations shall become effective on July 1, following such negotiations.
"Any recommendations contained in the *474 memorandum of understanding reached between the employer and employee organization as a result of negotiations shall be brought to the Board of Estimates for its approval by April 1st in order that the Board of Estimates shall have adequate time to consider the recommendations contained therein in connection with the proposed Ordinance of Estimates for the ensuing fiscal year."
Consequently, the agreements contained in the memoranda of understanding are not intended to be binding upon the Board of Estimates when the memoranda are entered into. Instead, they are agreements between the committee and the unions and constitute mere recommendations to the Board of Estimates, to be submitted to the Board by April 1 of each fiscal year. The Board then is supposed to have "adequate time," from April 1 until the submission of the Ordinance of Estimates for the ensuing fiscal year, to decide whether it approves. Considering this language and the provisions of the City Charter together, it is reasonable to conclude that final "approval" by the Board of Estimates of recommendations requiring appropriations will only take place by the Board's including such appropriations in the Ordinance of Estimates.
The Baltimore City Municipal Employee Relations Ordinance certainly does not authorize memoranda of understanding such as were entered into in the present case. Instead of being memoranda entered into between a committee and the unions, constituting mere recommendations to the Board of Estimates, submitted to the Board prior to April 1 for the next fiscal year only, these memoranda were entered into by the Board itself, after the beginning of the fiscal year, and purported to be binding upon the Board for two fiscal years. We hold that insofar as the subject memoranda of understanding may have required the Board of Estimates to include in the Ordinance of Estimates appropriations for the disputed annual increments, the memoranda were not authorized by the Municipal Employee Relations Ordinance. Therefore, the plaintiffs were not entitled to the declaratory and injunctive relief requested.
NOTES
[*] Reporter's Note: Singley, J., participated in the hearing of the case and in its decision, but retired prior to the adoption of the opinion by the Court.
[1] The employee organizations involved in this case are: American Federation of State, County and Municipal Employees, AFL-CIO, Council No. 67 and Local No. 44; Baltimore Fire Officers Local 964, IAFF, AFL-CIO, CLC; Baltimore Fire Fighters Local 734, IAFF, AFL-CIO, CLC; United Teachers of Baltimore City Union Local No. 340; and Maryland Nurses Association, Inc., affiliated with the American Nurses Association, Inc. They shall hereinafter be referred to as the unions.
[2] "Step" increments are payments by which city employees progress from the minimum, or flat salary rate, for their job classification, to the maximum salary for that same classification. The range between the minimum and maximum rate of pay for any given employee classification is divided into several steps. Generally, an employee begins at the minimum salary for the classification and receives "step" increments on an annual basis until the maximum salary for that classification is reached.

"Longevity" increments are salary increases granted to employees after a specified period of service to the City has been completed (e.g., 15 years of service), and is a fixed percentage of the maximum step of the employee's salary grade.
[3] No party has suggested that these agreements would be valid absent any statutory authorization. Cf. Mugford v. City of Baltimore, 185 Md. 266, 44 A.2d 745 (1946).
[4] The executive budget system of Baltimore City was in effect prior to the adoption of the present Budget Amendment to the State Constitution and served, in part, as a model for the State system. See Report of the Commission on Economy & Efficiency on a Budget System, reprinted in 1916 Journal of Proceedings of the Senate of Maryland, 129-134. For a discussion of the similar State budgetary process, see Md. Act. for Foster Child. v. State, 279 Md. 133, 367 A.2d 491 (1977); Panitz v. Comptroller, 247 Md. 501, 232 A.2d 891 (1967); McKeldin v. Steedman, 203 Md. 89, 98 A.2d 561 (1953); Dorsey v. Petrott, 178 Md. 230, 13 A.2d 630 (1940).