543 A.2d 841

ANNE ARUNDEL COUNTY, Maryland et al.

v.

**FRATERNAL ORDER OF ANNE ARUNDEL DETENTION OFFICERS AND PERSONNEL.**

**No. 137, Sept. Term, 1986.**

Court of Appeals of Maryland.

Argued March 3, 1987.

Decided July 28, 1988.

David S. Bliden, Deputy County Sol. (Stephen R. Beard, County Sol., on the brief), Annapolis, for appellants.

John Gregory Smith (Whitworth, Weber & Smith, on the brief), Crofton, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

ELDRIDGE, Judge.

This case concerns the validity of a provision in a collective bargaining agreement between Anne Arundel County and a union to resolve certain disputes that may arise in the future through arbitration.

## I.

Article 8, Title 4, of the Anne Arundel County Code authorizes the County to bargain collectively with certified representatives of the County's employees with regard to various matters. The local ordinance, in §§ 4–107 and 4–110 of Article 8, Title 4, also authorizes arbitration to resolve certain types of disputes between the County and the employees' representative. Pursuant to the statutory authorization for collective bargaining, Anne Arundel County and the Fraternal Order of Anne Arundel Detention Officers and Personnel (the Union) entered into a collective bargaining agreement on March 21, 1984. This agreement became effective on July 1, 1984, and continued through June 30, 1987, after which it became "self-renewing for yearly periods unless written notice of intention to terminate or modify this Agreement is given by either party ... not later than January 1st of any calendar year."

Article 1, § 1.2(a), of the agreement sets forth the employee positions that are currently represented by the Union. These positions are Detention Officer I, Detention Officer II, and nurse. Section 1.2(b) of the agreement

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

provides that if a position is newly-created or retitled, whether it is included in the unit represented by the Union depends upon "the mutual agreement of the County and the Union."[1] This section further provides that if an agreement cannot be reached, the dispute shall be resolved in accordance with the provisions of § 4–107(e) of Article 8 of the Anne Arundel County Code. Under § 4–107(e), "[w]henever the [County] Personnel Officer and the petitioning employee organization are in disagreement as to the determination of the appropriate representation unit, the issue shall be submitted to arbitration at the request of either party." According to § 4–107(e)(2), the decision of the arbitrator "shall be final and binding on the parties."[2]

On March 15, 1985, Anne Arundel County established an additional position, Detention Officer III (lieutenant), to be assigned to the Detention Center. The Union sought to include this new position in the same representation unit. The County Office of Personnel, however, considered the lieutenants "management and confidential employees" and therefore not proper members of this representation unit. *See* Article 8, § 4–107(d) of the Anne Arundel County Code. Pursuant to the collective bargaining agreement, the Union sought arbitration to resolve this issue. On June 24, 1985, the Acting Personnel Officer of the County informed the

---

**1.** The agreement also conditions the inclusion or exclusion of additional positions on whether, under § 1–225(b) of the Anne Arundel County Code, the position would be eligible for inclusion. In the 1985 revision of the Code, § 1–255(b) became § 4–107(c)(2) and (d). Sections 4–107(c)(2) and (d) set forth the relevant factors used in determining the "appropriate representation unit," including, *inter alia,* that "management and confidential employees [shall not be] included in the same unit with nonmanagement or nonconfidential employees." § 4–107(d).

**2.** Neither side argues that, in the absence of the agreement to arbitrate, § 4–107(e) would itself require arbitration of the dispute concerning the proper representation unit. In fact, the Union specifically takes the position that § 4–107(e) is directly applicable only to disputes "concerning the appropriate bargaining unit upon initial certification." (Union's brief, p. 2). In light of our disposition of this case, we shall assume arguendo that § 4–107(e) does not apply absent the arbitration provision in the collective bargaining agreement.

Union that the County would not enter into arbitration, apparently deciding that the Personnel Office's conclusion that the Detention Officer III position was "management and confidential" resolved the matter of the appropriate representation unit.[3]

On September 9, 1985, the Union filed suit in the Circuit Court for Anne Arundel County seeking an order compelling arbitration, and on June 26, 1986, the Union moved for summary judgment. The County filed an opposition to the motion, as well as a cross-motion for summary judgment, contending, *inter alia*, that "[t]he requested arbitration is not authorized" and that the arbitration provision in the collective bargaining agreement was "ultra vires." The circuit court granted the Union's motion, denied the County's motion, and issued an order compelling arbitration. The circuit court viewed the issue to be arbitrated as unlike "the amount of compensation to be set for employees or the hours to be set." Instead, the court characterized the representation issue as "ministerial in nature."

The County appealed the order to the Court of Special Appeals. Before any proceedings began in that court, we issued a writ of certiorari.

In support of its contention that arbitration is inappropriate, the County makes two alternate arguments. First, the County asserts that, because this agreement to arbitrate is not within the Maryland Uniform Arbitration Act,[4] the common law rule applies, rendering unenforceable agreements to arbitrate disputes which, at the time the agreement was entered into, were not yet in existence. Alternatively, the County argues that, even if an agreement to

---

**3.** Although not an issue in this case, it is unclear whether the County Personnel Office's position is that it is inappropriate for the Detention Officer III position to be a part of any employee representation unit or whether it is inappropriate for the position to be part of the same representation unit containing Detention Officers I and II and nurses.

**4.** Maryland Code (1974, 1984 Repl.Vol.), § 3–201 through § 3–234 of the Courts and Judicial Proceedings Article.

arbitrate future disputes is generally enforceable, submitting this collective bargaining dispute to arbitration is invalid under this Court's opinions in *Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 453 A.2d 1191 (1982); *Maryland Cl. Emp. Ass'n v. Anderson*, 281 Md. 496, 380 A.2d 1032 (1977); and *Mugford v. City of Baltimore*, 185 Md. 266, 44 A.2d 745 (1945). The County claims that arbitration of a collective bargaining dispute such as the one involved in this case is invalid unless authorized by the County Charter or by an act of the General Assembly, and that no charter provision or act of the General Assembly authorizes the arbitration. Therefore, the County concludes, the circuit court should not have issued an order compelling arbitration.

## II.

Historically, when two parties entered into an agreement to arbitrate disputes, courts generally distinguished between agreements to arbitrate existing disputes and agreements to arbitrate disputes that might arise in the future. While the former agreements would be judicially enforceable, courts generally took the position, with some exceptions, that agreements to arbitrate future disputes were voidable at any time by either party before an award was made. Thus, equity courts refused to specifically enforce agreements to arbitrate future disputes, and such an agreement would not be a defense to a suit in law or equity with respect to the matter agreed to be arbitrated. *See, e.g.,* 16 *Williston on Contracts* § 1923 (3d ed. 1976); *Brantley on Contracts* 227 (2d ed. 1912); Mullen, *Arbitration Under Maryland Law,* 2 Md.L.Rev. 326 (1938). *See also Insurance Company v. Morse,* 20 Wall. 445, 451, 22 L.Ed. 365 (1874); *Tomlinson v. Dille,* 147 Md. 161, 167, 127 A. 746 (1925); *Wilson & Co. v. Curlett,* 140 Md. 147, 153–154, 117 A. 6 (1922); *Allegre v. Maryland Ins. Co.,* 6 H. & J. 408, 413 (1823); *Contee v. Dawson,* 2 Bland 264, 275–276 (1826); *W.H. Blodgett Co. v. Bebe Co.,* 190 Cal. 665, 671, 214 P. 38, 41 (1923); *Cocalis v. Nazlides,* 308 Ill. 152, 158–159, 139

N.E. 95, 98 (1923); *Oskaloosa Sav. Bank v. Mahaska County State Bank*, 205 Iowa 1351, 1359, 219 N.W. 530, 533–534 (1928), *overruled, Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317 (Iowa 1977); *Dugan v. Thomas*, 79 Me. 221, 223, 9 A. 354, 354–355 (1887); *Sanford v. Boston Edison Co.*, 316 Mass. 631, 636, 56 N.E.2d 1, 4 (1944); *Pres't, etc., D. & H. Canal Co. v. Pa. Coal Co.*, 50 N.Y. 250, 258 (1872); *Pepin v. Societe St. Jean Baptiste*, 23 R.I. 81, 83–84, 49 A. 387, 388 (1901); *Johnson v. Brinkerhoff*, 89 Utah 530, 544–545, 57 P.2d 1132, 1139 (1936); *Kinney v. Relief Assn.*, 35 W.Va. 385, 387, 14 S.E. 8 (1891), *overruled, Board of Education v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977); *Avery v. Scott*, 8 Exch. 497, 500, 155 Eng.Rep. 1447, 1448 (1853). *See additionally, Restatement of Contracts*, §§ 550, 551 (1932).

The Maryland Uniform Arbitration Act, Code (1974, 1984 Repl.Vol.), § 3–206(a) of the Courts and Judicial Proceedings Article, in contrast, provides that agreements to arbitrate future disputes are "valid and enforceable." Section 3–206(b), however, provides that the Maryland Uniform Arbitration Act does not apply to an arbitration agreement between employers and employees unless the agreement expressly states that the Act applies. *See Wilson v. McGrow, Pridgeon & Co., P.A.*, 298 Md. 66, 467 A.2d 1025 (1983). Unless the terms of the collective bargaining agreement between Anne Arundel County and the Union make the Maryland Uniform Arbitration Act applicable, which they do not, § 3–206(a) will not apply to validate the agreement to arbitrate future disputes. Neither side in this case has pointed to any other statute which would make the arbitration agreement between the County and the Union enforceable.[5] Consequently, if the arbitration provision is

---

5. In particular, neither the County nor the Union has suggested that Article 8, Title 4, of the Anne Arundel County Code, authorizing collective bargaining agreements, would make the instant arbitration agreement enforceable. In light of the parties' positions, we shall assume arguendo that no statutory provision renders enforceable the arbitration agreement in this case.

to be enforced, it must be enforceable as a matter of Maryland common law. *See Bd. of Educ. v. P.G. Co. Educators' Ass'n,* 309 Md. 85, 95–98, 522 A.2d 931 (1987).

Many types of arbitration agreements have traditionally been enforceable in Maryland; indeed, arbitration agreements were and are encouraged by the courts and the General Assembly. *See, e.g.,* Ch. XXI of the Acts of 1778, § VIII; Ch. 379 of the Acts of 1878, § 1. *See also* Code (1974, 1984 Repl.Vol.), § 3–201 through § 3–234 of the Courts and Judicial Proceedings Article; Code (1957), Art. 7, § 1 through § 5. This Court has consistently stated that arbitration is a favored method of dispute resolution. *See, e.g., Bd. of Educ. v. P.G. Co. Educators' Ass'n, supra,* 309 Md. 85, 522 A.2d 931, and cases there cited; *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 468 A.2d 91 (1983).[6]

Only one type of arbitration agreement—an agreement to arbitrate disputes that might arise in the future—has been deemed unenforceable under Maryland common law principles. As previously indicated, courts would neither order specific performance of such agreements, *Contee v. Dawson, supra,* 2 Bland at 275–276, nor was the existence of an arbitration agreement a defense to a court action, *Tomlinson v. Dille, supra,* 147 Md. at 167, 127 A. 746; *Wilson & Co. v. Curlett, supra,* 140 Md. at 153–154, 117 A. 6;

---

**6.** Cases in other jurisdictions are to the same effect. *See, e.g., Bd. of Educ., Fairbanks N. Star Bor. Sch. Dist. v. Ewig,* 609 P.2d 10 (Alaska 1980); *John A. Errichetti Associates v. Boutin,* 183 Conn. 481, 439 A.2d 416 (1981); *Ass'n of Owners v. Swinerton & Walberg Co.,* 705 P.2d 28 (Hawaii 1985); *Bingham County Com'n v. Interstate Elec. Co.,* 105 Idaho 36, 665 P.2d 1046 (1983); *Minton Constr. Corp. v. Com.,* 397 Mass. 879, 494 N.E.2d 1031 (1986); *Crosby–Ironton, etc. v. Ind. School, etc.,* 285 N.W.2d 667 (Minn.1979); *Shaw v. Kuhnel & Associates, Inc.,* 102 N.M. 607, 698 P.2d 880 (1985); *Mobil Oil Indonesia v. Asamera Oil (Indonesia),* 43 N.Y.2d 276, 372 N.E.2d 21, 401 N.Y.S.2d 186 (1977); *Cyclone Roofing Co., Inc. v. David M. LaFave Co.,* 312 N.C. 224, 321 S.E.2d 872 (1984); *Ice City, Inc. v. Insurance Co. of North America,* 456 Pa. 210, 314 A.2d 236 (1974); *City of Hot Springs v. Gunderson's, Inc.,* 322 N.W.2d 8 (S.D.1982); *Robinson & Wells, P.C. v. Warren,* 669 P.2d 844 (Utah 1983); *Richco Structures v. Parkside Village, Inc.,* 82 Wis.2d 547, 263 N.W.2d 204 (1978); *T & M Properties v. ZVFK Architects,* 661 P.2d 1040 (Wyo.1983).

*Allegre v. Maryland Ins. Co, 'supra,* 6 H. & J. at 413; *Contee, supra,* 2 Bland at 276.

Under many circumstances, however, even agreements to arbitrate disputes that may arise in the future have been considered enforceable under Maryland common law principles. For example, a court will enforce an arbitration agreement if the issue to be arbitrated is only a condition precedent to the bringing of an action in court. *See, e.g., Eisel v. Howell,* 220 Md. 584, 588–589, 155 A.2d 509 (1959); *Wilson & Co., supra,* 140 Md. at 153, 117 A. at 8–9; *M. & C.C. of Balt. v. Clark,* 128 Md. 291, 97 A. 911 (1916); *Aetna Indem. Co. v. Waters,* 110 Md. 673, 73 A. 712 (1909); *Home Ins. Co. v. Schiffs' Sons,* 103 Md. 648, 64 A. 63 (1906); *Randall v. Glenn,* 2 Gill. 430, 438 (1844). *See also Avery v. Scott, supra,* 8 Exch. at 502, 155 Eng.Rep. at 1449. Moreover, when a dispute arises, if the parties voluntarily proceed to arbitration pursuant to an earlier arbitration agreement, and if an award is entered, the court will enforce the award. *See Cont. Mill. Co. v. Doughnut Corp.,* 186 Md. 669, 48 A.2d 447 (1946); *Tomlinson v. Dille, supra,* 147 Md. at 167, 127 A. at 748. Additionally, a court of chancery, "from the difficulty it finds in dealing with the subject in dispute without great loss or total ruin, has earnestly recommended and insisted upon the parties, submitting the matter in controversy to arbitration, according to the terms of their previous express agreement." *Contee v. Dawson, supra,* 2 Bland at 276. *See also Waters v. Taylor,* 15 Ves.Jr. 10, 33 Eng. Rep. 658 (1808).

Because the agreement between the County and the Union does not fit within any of the above-mentioned exceptions, the agreement would not have been enforceable under the earlier cases. The Union argues, however, that even if the arbitration clause were not enforceable under prior case law, this Court should now, in accordance with contemporary views, hold that agreements to arbitrate future disputes are enforceable. In appropriate instances, as the Union points out, we have modified common law principles to reflect contemporary conditions or views. *See, e.g.,*

*Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 497 A.2d 1143 (1985); *Jones v. State*, 302 Md. 153, 161, 486 A.2d 184 (1985); *Boblitz v. Boblitz*, 296 Md. 242, 462 A.2d 506 (1983); *Adler v. American Standard Corp.*, 291 Md. 31, 42–43, 432 A.2d 464 (1981); *Kline v. Ansell*, 287 Md. 585, 414 A.2d 929 (1980).

■ We agree with the Union that the earlier refusal of courts to enforce agreements to arbitrate future disputes is no longer a sensible approach. The old rule was based on reasoning that does not withstand analysis. There is no sound public policy for distinguishing between the enforceability of some agreements to arbitrate disputes that might arise in the future and the enforceability of all other arbitration agreements. We believe that agreements to arbitrate future disputes generally should be enforceable even in the absence of a specific statutory provision.

Moreover, we note that a number of jurisdictions have declined to follow the common law rule with regard to agreements to arbitrate future disputes, some overruling prior decisions.[7] The West Virginia Supreme Court of Appeals, in *Bd. of Ed., Etc. v. W. Harley Miller, Inc.*, 160 W.Va. 473, 482, 236 S.E.2d 439, 445 (1977), held that agreements to arbitrate future disputes would be enforceable, stating that "the weight of modern, enlightened authority favors arbitration as a preferred means of conflict resolution." Similarly, the Minnesota Supreme Court, in *Park Const. Co. v. Independent School Dist. No. 32*, 209 Minn. 182, 296 N.W. 475 (1941), overruled prior Minnesota cases to hold that agreements to arbitrate future disputes are enforceable at common law. *See Pettinaro Const. Co. v.*

---

7. Those states which have adopted the Uniform Arbitration Act verbatim have likely found no need to address this question since the Uniform Act applies to contracts generally even if the contract does not specifically make the Act applicable. *See* 7 U.L.A. 1 (1955). Consequently, in virtually all contexts, agreements to arbitrate future disputes will be enforceable. The Maryland Act, in contrast, does not apply to contracts in the employer-employee context unless the contract explicitly makes the Act applicable. *See also Bd. of Educ. v. P.G. Co. Educators' Ass'n*, 309 Md. 85, 95–96 n. 3, 522 A.2d 931 (1987).

*Harry C. Partridge, Etc.*, 408 A.2d 957 (Del.Ch.1979); *Ass'n of Owners v. Swinerton & Walberg Co.*, 705 P.2d 28, 34–35 (Hawaii 1985); *United Ass'n of Journ. & App. of Plumbing, Etc. v. Stine*, 76 Nev. 189, 351 P.2d 965 (1960); *Borough of Ambridge Water Authority v. Columbia*, 458 Pa. 546, 548–549, 328 A.2d 498, 500 (1974). *See also Zahn v. District Court in and for County of Weld*, 169 Colo. 405, 457 P.2d 387 (1969); *Interstate Bakeries Corp. v. Bakery, Etc., Drivers U.*, 31 Ill.2d 317, 201 N.E.2d 452 (1964); *Joseph L. Wilmotte Co. v. Rosenman Bros.*, 258 N.W.2d 317, 328 (Iowa 1977); *LaStella v. Garcia Estates*, 66 N.J. 297, 331 A.2d 1 (1975). These courts have generally reasoned that not only is the theory underlying the rule against agreements to arbitrate future disputes unsound, but also, in light of the contemporary view of arbitration, agreements to arbitrate future disputes should be enforceable.

In Maryland, as in other states, the reason most frequently given in early cases for refusing to enforce agreements to arbitrate future disputes was that the courts would not allow the parties to "oust the court of jurisdiction." *Tomlinson v. Dille, supra,* 147 Md. at 167, 127 A. 746; *Wilson & Co. v. Curlett, supra,* 140 Md. at 153, 117 A. 6; *Allegre v. Maryland Ins. Co., supra,* 6 H. & J. at 413; *Contee v. Dawson, supra,* 2 Bland at 275–276. To the extent that arbitration ousts the court of jurisdiction in any case, however, courts have only protested this "ouster" with respect to one type of arbitration agreement. In addition, the Minnesota Supreme Court has also pointed out the flaws in this reasoning (*Park Const. Co. v. Independent School Dist. No. 32, supra,* 209 Minn. at 186, 296 N.W. at 477):

> "[T]here appears never to have been any factual basis for holding that an agreement to arbitrate 'ousted' jurisdiction. It has no effect upon the jurisdiction of any court. Arbitration simply removes a controversy from the arena of litigation. It is no more an ouster of judicial jurisdiction than is compromise and settlement or that peculiar offspring of legal ingenuity known as the covenant not to

sue. Each disposes of issues without litigation. One no more than the other ousts the courts of jurisdiction. The right to a jury trial, even in a criminal case, may be waived. So, also, may the right to litigate be waived. Such waiver may be the result of contract or unilateral action."

Furthermore, to the extent that there might have been a public policy of this State against the enforcement of agreements to arbitrate future disputes, that public policy changed with the adoption by the General Assembly of the Uniform Arbitration Act. That statute, in § 3–206(a) of the Courts and Judicial Proceedings Article, explicitly makes agreements to arbitrate future disputes enforceable. *See also* 7 U.L.A. 1 (1955) (Uniform Arbitration Act).[8] As the Court of Appeals of Michigan stated (*E.E. Tripp, Ex. Con., Inc. v. City of Jackson, supra,* 60 Mich.App. 221, 246–247, 230 N.W.2d 556, 568 (1975)):

"The heavily case-loaded courts are no longer jealous of their jurisdiction. Where the parties, by a fair agreement, have adopted a speedy and inexpensive means by which to have their disagreements adjusted, we see no public policy reasons for the courts to stand in their way. On the contrary we have a clear expression of public policy in the legislative enactments which provide for statutory arbitration."

*See also, Interstate Bakeries Corp. v. Bakery, Etc., Drivers U.,* 31 Ill.2d at 319–320, 201 N.E.2d at 453; *Park Const.*

---

**8.** It is true, as the County points out, that unlike the Uniform Arbitration Act, the Maryland Uniform Arbitration Act is only applicable in the context of employer-employee contracts if the contract explicitly so states. *See* § 3–206(b). This does not, however, lead to the conclusion that the Maryland General Assembly intended that agreements in labor contracts to arbitrate future disputes would be unenforceable unless the contract expressly made the Act applicable. Rather, as explained in *Wilson v. McGrow, Pridgeon & Co., P.A.,* 298 Md. 66, 467 A.2d 1025 (1983), the General Assembly enacted § 3–206(b) because the enforceability of arbitration provisions in collective bargaining agreements is ordinarily governed by federal labor law.

*Co. v. Independent School Dist., supra,* 209 Minn. at 186, 296 N.W. at 477.

Therefore, we hold that agreements to arbitrate future disputes are generally valid and enforceable under Maryland common law.

## III.

As previously indicated, the County makes the alternate argument that arbitration of a public employee labor dispute of the type involved in this case is invalid unless authorized by the Anne Arundel County Charter or by the General Assembly. Reliance is placed upon this Court's opinions in *Office & Prof. Employees Int'l v. MTA, supra,* 295 Md. 88, 453 A.2d 1191; *Maryland Cl. Emp. Ass'n v. Anderson, supra,* 281 Md. 496, 380 A.2d 1032; and *Mugford v. City of Baltimore, supra,* 185 Md. 266, 44 A.2d 745. The County's argument based on these cases consists of two parts.

First, the County broadly contends that the above-cited cases "clearly establish" that a county or municipality generally "may not enter into binding arbitration without specific authorization arising from a public general law or charter provision. * * * There is no public general law or charter provision authorizing Anne Arundel County to enter into binding arbitration." Therefore, according to the County, the contract provision upon which the Union relies in demanding arbitration "is unenforceable." (County's Brief, pp. 4–5).

Second, the County advances the somewhat narrower position that a charter county, absent authorization in its charter or from the General Assembly, may not by ordinance or contract delegate to an arbitrator legislative decision-making power which, under the local government's charter, is vested in a county executive and county council. Anne Arundel County argues that, because the setting of employee compensation is the type of discretionary legislative duty which is vested in the County Executive and the

County Council under the Anne Arundel County Charter, issues having an impact on this function may not be delegated to an arbitrator absent authority to do so granted by the Charter or the General Assembly. The representation issue in this case, according to the County, has such an effect on employee compensation that it may not be delegated to an arbitrator. (County's Brief, pp. 5–6).

The County's broad contention, that *any* arbitration pursuant to a local ordinance and collective bargaining agreement is invalid unless specifically authorized by the county charter or public general law, represents a misreading of this Court's opinions in *Office & Prof. Employees Int'l v. MTA, supra; Maryland Cl. Emp. Ass'n v. Anderson, supra;* and *Mugford v. City of Baltimore, supra.* With regard to Anne Arundel County's narrower position, the general legal principle asserted by the County is essentially correct under our cases. Thus, a charter county may not, absent authorization by public general law or charter provision consistent with Art. XI–A of the Maryland Constitution, delegate to an arbitrator a discretionary governmental power or function which the charter vests in the county executive and county council. Furthermore, the ultimate determination of county employees' compensation is, under the Anne Arundel County Charter, one of these nondelegable governmental functions. Therefore, an arbitrator's decision regarding employee compensation could not bind the County Executive and County Council in the submission and enactment of the budget under the executive budget system prescribed by the Anne Arundel County Charter. We disagree with the County, however, that the representation issue in this case has such an impact on the ultimate determination of employee compensation that the issue may not be arbitrated pursuant to the ordinance and collective bargaining agreement.

In broadly contending that any arbitration pursuant to the local ordinance and collective bargaining agreement is invalid unless specifically authorized by its Charter or

enactment of the General Assembly, Anne Arundel County, particularly at oral argument before us, most heavily relies on *Office & Prof. Employees Int'l v. MTA, supra.* The issue in that case was whether the Mass Transit Administration (MTA), a *state* government agency, was authorized to enter a collective bargaining agreement, including an arbitration provision, with regard to the "wages, hours, pension rights, etc. of a particular group of the Administration's employees," consisting of 35 secretarial and clerical personnel. 295 Md. at 90, 91, 453 A.2d 1191. The provisions of state law authorizing the MTA to engage in collective bargaining and arbitration, with regard to certain employees, were contained in Maryland Code (1977), §§ 7–601 and 7–602 of the Transportation Article. In asserting that collective bargaining and arbitration with respect to the 35 positions were authorized and could be compelled by a court, one of the Union's arguments was

"that, even if the collective bargaining authorization in § 7–601 and the arbitration provision in § 7–602(b) of the Transportation Article do not encompass the thirty-five additional clerical employees, nothing in these sections *prohibits* the MTA from arbitrating the representational issue and, depending upon the result of the arbitration, from entering into a collective bargaining agreement covering the wages, pension rights, etc. of these employees. Consequently, the Union argues, the MTA's alleged agreement to arbitrate this issue is valid and should be enforced." 295 Md. at 94, 453 A.2d 1191.

In rejecting this argument, we initially pointed out that § 7–601 denied the MTA authority to enter a collective bargaining agreement with respect to these 35 positions. *Id.* at 96, 453 A.2d 1191. We then stated (*id.* at 97, 453 A.2d 1191):

"Apart from the principles of statutory construction discussed above, the Union's first argument would still lack merit. Even if § 7–601 were not construed as prohibiting collective bargaining agreements except in accordance with its terms, the result would be the same.

"It is established in this State that, absent express legislative authority, a government agency cannot enter into binding arbitration or binding collective bargaining agreements establishing wages, hours, pension rights, or working conditions for public employees. *Maryland Cl. Emp. Ass'n v. Anderson,* 281 Md. 496, 508–513, 380 A.2d 1032 (1977); *Mugford v. City of Baltimore,* 185 Md. 266, 270–272, 44 A.2d 745 (1945). *See also City of Balto. v. Am Fed. of St., Etc.,* 281 Md. 463, 379 A.2d 1031 (1977)."

In the instant case, Anne Arundel County seizes upon the final sentence of the above quotation, and the citation to three earlier cases involving local governments operating under charters, in arguing that collective bargaining agreements with arbitration provisions must be specifically authorized by an act of the General Assembly or by a county charter. The language relied on in the *MTA* case clearly does not support Anne Arundel County's argument. The point made in *MTA* was simply that, for a government agency to enter a collective bargaining agreement with an arbitration provision, it must be expressly authorized by law to do so. As the agency in that case was a state agency, the question of express legal authorization related to a statute enacted by the General Assembly. Nothing in the *MTA* case suggests, however, that the legal authorization for a local government agency to engage in collective bargaining and arbitration could not come from a local ordinance. It is true that the *Anderson* and *Mugford* cases cited in the *MTA* opinion did concern the need for a certain level of legal authorization (*i.e.* in the charter or public general law) if a local collective bargaining ordinance purported to bind the local government executive and council in the exercise of certain powers or functions which the charter vests in the executive and council. Nevertheless, these earlier cases did not hold that *every* local government collective bargaining agreement and arbitration must be specifically authorized by charter or public general law. And the earlier cases were cited in the *MTA* opinion only for the more general principle that a collective bargaining

agreement with an arbitration provision, entered into by a government agency, must be expressly authorized by law.

Here, there is express legislative authority for Anne Arundel County's Office of Personnel to enter collective bargaining agreements and engage in arbitration. It is contained in Article 8, Title 4, of the Anne Arundel County Code. The impediment to arbitration which existed in the *MTA* case is not present in the case at bar.[9]

As previously indicated, we essentially agree with the general legal principle underlying Anne Arundel County's narrower contention regarding the delegation of charter functions to an arbitrator; we disagree, however, with the County's application of that principle to the facts before us. In *Maryland Cl. Emp. Ass'n v. Anderson, supra* 281 Md. at 508–509, 380 A.2d at 1039, this Court stated:

> "The validity of collective bargaining agreements in which municipalities bind themselves to exercise their discretionary legislative powers over compensation of public employees in a particular manner, or agree to delegate such powers to binding arbitration, has been the subject of much recent litigation. Where municipal governments have been authorized by higher law, *i.e.,* state constitutional provisions, or public general laws or municipal charter provisions, to enter into collective bargaining agreements which bind them in the exercise of their legislative discretion, the courts have generally upheld such collective bargaining agreements, rejecting contentions that they amount to invalid abdications or delegations of legislative authority. On the other hand, in the situation where neither a public general law nor municipal charter provision authorized the municipality to

---

9. The County has not suggested in this case that the terms of Article 8, Title 4, do not authorize the collective bargaining agreement and the requested arbitration; instead, its position has been that the authority must come from a higher source. As both sides and the court below have proceeded on the basis that the terms of the local ordinance did expressly authorize the agreement and requested arbitration, we shall for purposes of this case proceed upon the same assumption.

bind itself in the exercise of legislative discretion over public employee compensation, the courts have generally taken the position that attempts to do so in collective bargaining agreements or municipal ordinances are invalid."

See *Mugford v. City of Baltimore, supra,* 185 Md. at 270, 44 A.2d at 747. *See also City of Balto. v. Am. Fed. of St., Etc., supra,* 281 Md. at 468, 471, 379 A.2d at 1033–1035. The *Anderson* and *Mugford* cases make clear that delegation to private individuals, of certain duties involving the exercise of discretion specifically assigned by a county charter to the county executive and council, may be invalid.

The Anne Arundel County Charter, like the Harford County and Baltimore City Charters involved in the *Anderson* and *Mugford* cases, prescribes a detailed executive budget system. Under it, for each fiscal year, the Anne Arundel County Executive, after receiving budget proposals from county agencies and officials, must submit to the County Council a current expense budget which includes proposed expenditures for employee compensation. *See* §§ 701–704, 706–707 of the Anne Arundel County Charter. In addition, the County Executive must promulgate, subject to County Council approval, a detailed pay plan for county employees which shall classify employees and prescribe a salary range for each class of employees. *See* § 801 of the Charter. The County Council generally may decrease or delete items in the annual budget as submitted by the Executive, but it may not "increase any expenditure recommended by the County Executive for current or capital purposes." *See* § 709 of the Charter.

Turning to the case at bar, Anne Arundel County maintains that an arbitrator's decision in the representation dispute will have a substantial impact upon the County Executive's and County Council's duties under the Charter to determine employee compensation. Therefore, according to the County, the agreement to arbitrate the representation dispute constitutes an invalid delegation of the Execu-

tive's and Council's authority over the budget and, specifically, over employee compensation.

In asserting that the representation dispute directly affects the compensation which the lieutenants at the Detention Center will receive, the County points out that the present collective bargaining agreement contains provisions for specific wage increases and overtime payments for those employees currently in the collective bargaining unit. At oral argument before us, the County suggested that, if the lieutenants are determined to be members of the unit, the same wage and overtime provisions will automatically be applicable to them.

We find no support for the County's suggestion in the collective bargaining agreement or in county law. Instead, we agree with the Union's position that an arbitrator's decision placing the lieutenants in the same collective bargaining unit will have no direct effect on the lieutenants' compensation. As the Union stated in oral argument before us, if it is determined that the lieutenants are to be included in the unit, the matter of their compensation is entirely subject to negotiation and the processes set forth in the County Charter. According to the Union, and we concur, the existing compensation and overtime provisions in the collective bargaining agreement, applicable to the current members of the unit, will not automatically apply to the lieutenants.

In our view, the determination of whether positions should be included in or excluded from the representation unit is not so determinative of employee compensation as to be an inappropriate subject for arbitration in the absence of authority granted by the Charter or General Assembly. This type of employee classification does not have the direct impact upon the Executive's and Council's duty to set employee compensation that actual determination of the wages and salary of county employees does. *Cf. Mont. Co. Ed. Ass'n v. Bd. of Educ.*, 311 Md. 303, 322–323, 534 A.2d 980, 989 (1987); *The Idaho Statesman v. N.L.R.B.*, 836 F.2d 1396, 1397 (D.C.Cir.1988); *Newspaper Printing Corp. v.*

*N.L.R.B.,* 625 F.2d 956, 963 (10th Cir.1980), *cert. denied,* 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981); *Hess Oil & Chemical Corporation v. N.L.R.B.,* 415 F.2d 440, 445 (5th Cir.1969), *cert. denied,* 397 U.S. 916, 90 S.Ct. 920, 25 L.Ed.2d 97 (1970).

An arbitrator's decision as to which representation unit is appropriate for a certain group of employees may have no effect upon the wages and salaries of those employees; it merely permits the Union to bargain with the County on behalf of the employees. Furthermore, as conceded by the Union, the County Council and the County Executive still retain the ultimate decision-making authority with respect to employee compensation. Both the County Executive and the County Council must, in accordance with their duties under the Charter, approve any agreement reached by the County's Office of Personnel and Union representatives.

For the above reasons, we reject the County's argument that the agreement submitting to arbitration the representation dispute in this case was invalid.

JUDGMENT OF THE CIRCUIT COURT AFFIRMED. ANNE ARUNDEL COUNTY TO PAY COSTS.