569 A.2d 1244

Habern W. FREEMAN

v.

**LOCAL 1802, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 67, AFL–CIO et al.**

Habern W. FREEMAN et al.

v.

**MARYLAND CLASSIFIED EMPLOYEES ASSOCIATION INC. et al.**

Nos. 4, 5, Sept. Term, 1988.

Court of Appeals of Maryland.

Feb. 27, 1990.

Leonard E. Cohen (Mary E. Pivec, Frank, Bernstein, Conaway & Goldman, Baltimore, Max D. Miller, Jr., Victor K. Butanis, Richard G. Herbig, Harford County Dept. of Law, Bel Air), on brief, for petitioner in No. 4.

Kenneth Niman (Harriet E. Cooperman, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, J. Edward Davis, J. Calvin Jenkins, Jr., Stephen B. Awalt, Davis & Jenkins, Towson, on brief, for respondent in No. 4.

Mary E. Pivec (Leonard E. Cohen, Frank, Bernstein, Conaway & Goldman, Baltimore, Max D. Miller, Jr., Victor K. Butanis, Richard G. Herbig, Harford County Dept. of Law, Bel Air), all on brief, for petitioner in No. 5.

Stephen B. Awalt (J. Edward Davis, J. Calvin Jenkins, Jr., Davis & Jenkins, all on brief), Towson, for respondent in No. 5.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL,* JJ.

ELDRIDGE, Judge.

The broad issue in these cases is whether the Circuit Court for Harford County erred in issuing writs of mandamus which required the County Executive of Harford County to sign certain collective bargaining agreements.

I.

Beginning in January 1987, pursuant to the Harford County Employee Labor Relations Act (ELRA), Harford County Code, Ch. 38, Art. I, §§ 38-1—38-11, Harford County conducted separate negotiations with two labor organizations representing two different groups of Harford County employees. Those organizations are Local 1802 of the American Federation of State, County and Municipal Employees, Council 67, AFL–CIO (AFSCME), and the Maryland Classified Employees Association, Inc. (MCEA).

On March 23, 1987, Habern Freeman, the County Executive of Harford County, received a legal opinion[1] which concluded that he had no authority to bargain collectively with the labor organizations. This conclusion was based on the lack of a state public general law or county charter provision authorizing the collective bargaining process as carried out under the ELRA, and on perceived conflicts with county charter provisions governing public employment and the fiscal authority of the County Executive in preparing the county budget. Freeman chose not to reveal immedi-

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. The legal opinion was furnished by a private law firm that served as expert labor counsel to the County. The County's law department later reviewed and concurred with the opinion.

ately the contents of this opinion.[2]

On March 24, 1987, the negotiator representing the County, Personnel Officer Pat Yancone, reached a tentative agreement with MCEA on a new collective bargaining agreement, which was later ratified by MCEA's membership. A tentative agreement between AFSCME and Yancone was reached on April 14, 1987, and that agreement was also ratified by AFSCME's membership.[3] Both agreements were to cover fiscal years 1987–1988 and 1988–1989.

The tentative agreements are extensive, covering a variety of employment conditions including salary, hours, overtime, holidays, leave, seniority, life insurance, health insurance, and discipline. Both agreements provide that the County shall deduct union membership dues from the wages of each employee member who individually requests the deduction. Under the AFSCME agreement, the payroll deduction authorization of the employee is renewed automatically for a subsequent year unless revoked within a 15–day period. Under the MCEA agreement, the authorization is similarly renewed automatically, but there is a 30–day period during which the employee may revoke the authorization. Both agreements acknowledge that benefits and fiscal matters were contingent upon funding by the Harford County Council.

Consistent with these agreements, the County Executive submitted his fiscal 1987–1988 pay and classification plan for county employees to the Harford County Council, where the plan received approval. Nonetheless, on July 13, 1987,

---

**2.** Freeman stated, in an affidavit, that over the next several months he held "numerous meetings ... with labor counsel and the County Attorney's office in order to review the opinion and its implications" and that he utilized the time "to prepare for the protective measures which would have to be implemented in anticipation of potential labor action by the respective unions" in the event that Freeman refused to sign any collective bargaining agreements.

**3.** An earlier tentative agreement with AFSCME had been reached on March 13, 1987, but the membership voted against ratification of that agreement.

the County Executive, citing the March 23 legal opinion, issued a memorandum which informed the County's negotiator that he (the County Executive) would not sign the agreements negotiated with the labor organizations. In addition, the County Executive refused to honor the dues checkoff cards.

Thereafter, AFSCME and MCEA each sought in the Circuit Court for Harford County a writ of mandamus compelling the County Executive to execute the agreements and remit to the organizations the dues monies which employees had authorized the County to remit. The circuit court initially granted the plaintiffs' motions for interlocutory injunctions requiring the County to continue to withhold dues from the pay of employees belonging to the organizations. At the conclusion of trial, the court issued the writs of mandamus requested by both labor organizations. The writs stated that implementation of the orders would be stayed pending any appeal.

The County Executive filed timely notices of appeal to the Court of Special Appeals. Before any proceedings in that court, we granted the County Executive's petitions for writs of certiorari.

## II.

Harford County is a charter home rule county under Art. XI-A of the Constitution of Maryland. The Harford County Charter prescribes what is known as an "executive budget system." Under § 302 of the Charter, all county executive power is vested in the County Executive, who is required to prepare and submit "to the Council the annual County budget in the manner and form provided in Article V of this Charter." Under Article V, § 503, the budget shall consist of the current expense budget, the capital budget and capital program, and the budget message. Section 509 dictates that "[n]ot later than three months prior to the beginning of each fiscal year [which runs from July 1 to June 30] the County Executive shall submit to the Council

the proposed County budget for that fiscal year." Section 512 provides that

"the Council may decrease or delete any items in the budget except those required by the laws of this State or of this County.... The Council shall have no power to change the form of the budget as submitted by the County Executive, or to alter the revenue estimates except to correct mathematical errors, or to increase any expenditures recommended by the County Executive for current expense or capital purposes."

Thus, the County Executive determines the maximum appropriation for any particular purpose. In addition to this critical role in the annual county budgetmaking process, the County Executive, under § 311, may also veto "individual items in budget and appropriation bills."

The Harford County Charter provides, in § 302, that the County Executive has the duty and responsibility of "signing or causing to be signed on the County's behalf all deeds, contracts and other instruments." In addition, Article VI of the Charter contains eight sections directing the County Council to establish a system of personnel administration, and setting requirements for that system.

The Harford County Council enacted the ELRA in 1973. The ELRA grants certain county employees the right to form or join employee organizations, and provides for certification of the employees' collective bargaining representative. Section 38–6.A. bestows on certified employee organizations the right "to negotiate collectively with the County in matters related to wages, hours, working conditions and other terms of employment of all employees in the representation unit...." Section 38–1.B. imposes on the county "the obligation to enter into negotiations with affirmative willingness to reach agreement in matters of wages, hours, working conditions and other terms of employment...." Section 38–6.B. defines the term "negotiation" as follows:

"The term 'negotiation,' as used in this Article, shall include the duty to confer in good faith at reasonable

times and to reduce to a memorandum of agreement the matters agreed upon as a result of such meetings and conferences when all issues have been resolved, which memorandum shall be signed by the duly authorized county and employee organization representatives."

The ELRA does not purport to designate anyone other than the County Executive as "the duly authorized county representative," who shall sign for the County "when all issues have been resolved." The labor organizations contend that the execution of the agreements by the County Executive in this case is a ministerial duty which a court, by writ of mandamus, can order to be performed.

The County Executive's principal argument against issuance of the writs of mandamus, in the circuit court and in the briefs before this Court, was that Harford County, as a home rule county, could not enter into collective bargaining agreements with its employees absent a state public general law or a charter amendment so authorizing. The County Executive relied on four opinions of this Court in support of this argument. *See Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 453 A.2d 1191 (1982); *Maryland Cl. Emp. Ass'n v. Anderson*, 281 Md. 496, 380 A.2d 1032 (1977); *City of Balto. v. Am. Fed. of St., Etc.*, 281 Md. 463, 379 A.2d 1031 (1977); *Mugford v. City of Baltimore*, 185 Md. 266, 44 A.2d 745 (1945).

Subsequent to the submission of briefs in this case, but prior to oral argument, this Court decided *Anne Arundel County v. Fraternal Order*, 313 Md. 98, 543 A.2d 841 (1988), in which Anne Arundel County had made an argument similar to the County Executive's argument in the present case. In the *Anne Arundel County* case, we made it clear that the prior cases in this court "did not hold that *every* local government collective bargaining agreement and arbitration must be specifically authorized by charter or public general law." 313 Md. at 113, 543 A.2d at 849. It was sufficient for Anne Arundel County's Office of Personnel to receive its express legislative authority to enter into collective bargaining agreements from a county ordinance.

313 Md. at 114, 543 A.2d at 849. On the other hand, the *Anne Arundel County* case reaffirmed the holdings in our prior cases that, absent authorization from the county charter or State public general law, the local ordinance could not validly provide for the delegation to others "of certain duties involving the exercise of discretion specifically assigned by a county charter to the county executive and council," 313 Md. at 115, 543 A.2d at 850. In other words, simply put, a local collective bargaining ordinance could not violate the county charter, unless the General Assembly of Maryland by public general law in effect abrogated the inconsistent provision of the charter.

■ Thus, it was clearly permissible for Harford County, by a duly enacted ordinance, to authorize collective bargaining with county employees. At oral argument before us, however, counsel for the County Executive insisted, as also argued in the briefs, that the process of collective bargaining under the ELRA conflicted with the charter's budget and personnel systems and unlawfully restricted the discretion of the County Executive and County Council over personnel and budgetary matters. Specifically, counsel for the County Executive contended that a collective bargaining agreement cannot bind the County for more than one year, in regard to any terms, absent a charter provision or public general law so authorizing, and that the ELRA itself forbids multi-year agreements.[4] The attorneys for the County Executive also disputed the labor organizations' contention that the terms of the agreements reached at the bargaining table had been accepted by the County Executive. The attorneys for the County Executive did not argue, however, that mandamus would be inappropriate if we were to reject all of the County Executive's arguments concerning the ELRA.

---

4. The parties agree that a collective bargaining agreement cannot bind the County beyond one fiscal year regarding wages and certain benefits. There is sharp disagreement concerning whether an agreement can bind the County to provide a certain insurance plan beyond one fiscal year.

While the above-summarized issues concerning public employee collective bargaining in Harford County may all be quite important, this case simply does not provide us with an opportunity to reach them. We cannot agree with the assumption, apparently shared by all parties and the trial judge below, that this would be a proper case for issuance of a writ of mandamus, even if we found no legal fault with the ELRA and the particular collective bargaining agreements at issue.

## III.

Judge Alvey, writing for the Court over one hundred years ago in *George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co.,* 59 Md. 255, 259 (1883), summarized the law concerning the writ of mandamus:

> "*Mandamus* is a most valuable and essential remedy in the administration of justice, but it can only be resorted to to supply the want of some more appropriate ordinary remedy. Its office, as generally used, is to compel corporations, inferior tribunals, or public officers to perform their functions, or some particular duty imposed upon them, which, in its nature, is imperative, and to the performance of which the party applying for the writ has a clear legal right. The process is extraordinary, and if the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, or if there be any ordinary adequate legal remedy to which the party applying could have recourse, this writ will not be granted."

This Court has repeatedly emphasized that mandamus ordinarily will not lie to control the exercise of discretion. *See Board v. Secretary of Personnel,* 317 Md. 34, 46, 562 A.2d 700 (1989), and cases there cited.

The trial judge below, in concluding that mandamus would be an appropriate remedy in this case, merely quoted the following language of Judge Horney from *Murray v. Curlett,* 228 Md. 239, 243–244, 179 A.2d 698 (1962), *reversed*

*on other grounds,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963):

> "We were then of the opinion and we now hold that where the performance of a duty prescribed by law depends on whether the statute or regulation is constitutional or invalid, there is no reason why the question may not be determined on a petition for a writ of mandamus under such circumstances as are present in this case."

The appellants in *Murray* had sought a writ of mandamus to compel the Board of School Commissioners of Baltimore City, and the individual members thereof, to "rescind and cancel" a board rule requiring all schools to open with a reading of a chapter in the Bible and/or the Lord's Prayer. The trial court had sustained a demurrer to the petition for a writ of mandamus on the ground that the Board was exercising discretionary power in requiring the opening exercises. This Court, in *Murray,* decided that mandamus would lie to compel the Board to rescind the rule if the rule violated the constitutional rights of the appellants, a student and his mother who claimed they were atheists.

The *Murray* case recognizes the need for there to be "a duty prescribed by law" before mandamus relief is appropriate. The respondent labor organizations in the instant case sought writs of mandamus to compel the County Executive to sign the agreements, alleging that the Harford County ELRA required him to do so. We do not agree with the respondents' interpretation of the ELRA in this regard.

As noted above, the ELRA imposes on the County a duty to bargain in good faith and to try to reach agreements with the employees' representatives. There is, however, no obligation to reach agreements or to submit to binding arbitration after an impasse.[5] The County Execu-

---

5. An early provision of the ELRA requiring the County to submit to binding arbitration the issue of employee compensation, after an impasse in negotiations, was held to be invalid by the Court in

tive, in whom all executive power is vested by the Charter, is the "duly authorized county representative" upon whom the ELRA imposes a duty to sign an agreement with labor organizations, but only after "all issues have been resolved." Nothing in the ELRA or the Charter suggests that anyone other than the County Executive can decide, on behalf of the County, when "all issues have been resolved."

The labor organizations emphasize that the Personnel Officer, who conducted the negotiations on behalf of the County, corresponded with the County Executive throughout the collective bargaining process, keeping him abreast of the negotiations. The organizations claim that the County Executive had orally agreed to all the terms of the agreement and that his signature at this point had become purely ministerial.

Preliminarily, we repeat that counsel for the County Executive, at oral argument before us, disputed the contention that the County Executive had accepted the terms of the agreements. Both tentative agreements were reached *after* the County Executive had received the legal opinion calling into question his authority to sign the agreements. Thus, the County Executive may have taken the position that, as the agreements were legally invalid according to counsel, there was no reason for him to decide whether he concurred in the terms of the agreements. It is far from clear that "all issues ha[d] been resolved" concerning the agreements.

Moreover, even assuming that the County Executive had orally accepted all terms of the agreements, mandamus would still not lie to compel his signature. For purposes of issuing a writ of mandamus, we cannot accept the dichotomy suggested by the labor organizations, whereby the County Executive's act of agreeing can be divided into a discretionary part, where he subjectively accepts the terms

*Maryland Cl. Emp. Ass'n v. Anderson,* 281 Md. 496, 380 A.2d 1032 (1977).

of the contract, and a ministerial part, where he affixes his signature.

Chief Justice Marshall, in *Marbury v. Madison,* 1 Cranch 137, 157–158, 2 L.Ed. 60, 67 (1803), discussing the acts of the President and of the Secretary of State in making an appointment, recognized that the signature of the deciding authority may be the final act signifying his discretionary decision, and the Chief Justice distinguished the signature from a later ministerial act by someone who was not the deciding authority:

"The appointment being the sole act of the President, must be completely evidenced, when it is shown that he has done every thing to be performed by him.

\* \* \* \* \* \*

"The last act to be done by the President, is the signature of the commission. He has then acted on the advice and consent of the senate to his own nomination. The time for deliberation has then passed. He has decided....

"Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised....

\* \* \* \* \* \*

"The commission being signed, the subsequent duty of the secretary of state is prescribed by law, and not to be guided by the will of the President."

Under the Harford County ELRA, the County Executive has the discretion to agree to terms with the labor organizations, or not to agree to terms. The County Executive's signature on a collective bargaining agreement evidences his acceptance of the agreement. Until he signs an agreement, he retains the discretion to reject it, and mandamus will not lie to compel him to perform a discretionary duty. It is not, under the circumstances of this case, appropriate for a court to inquire into why the County Executive refused to sign.

■ It was also inappropriate for the labor organizations to introduce parol evidence that the County Executive in substance agreed to the terms of the agreements. In *State ex rel. Bain v. Clallam County Bd. of Co. Com'rs*, 77 Wash.2d 542, 463 P.2d 617 (1970), the Supreme Court of Washington held that a union was not entitled to a writ of mandamus to compel the Clallam County Commissioners to adopt an alleged oral collective bargaining agreement. The court stated (463 P.2d at 621):

"[U]ntil reduced to writing and executed by the bargaining parties, an agreement does not ... become a collective bargaining agreement. Any understanding arrived at in collective bargaining negotiations necessarily, therefore, remains preliminary, or ... tentative until merged into a written agreement. Obviously, the legislature in authorizing and in empowering county commissioners to enter into *written* agreements did so to avoid ... possibly binding the county and its treasury to contractual obligations established only by parol evidence."

It is important to emphasize that this is not a situation where the law bestows the power to negotiate and bind a county, with regard to a particular matter, upon someone other than the county executive. *Compare Pr. Geo's Co. v. American Federation*, 289 Md, 388, 391 n. 2, 424 A.2d 770 (1981) (where the county labor code provided that "[a]ny agreement reached by the negotiators shall be reduced to writing and shall be executed by both parties"). Under the circumstance where someone other than the county executive can bind the county, the signature of the county executive might be merely ministerial. *See Hormes v. Baltimore County*, 225 Md. 371, 377, 170 A.2d 772 (1961). Courts have held that mandamus would lie in such a case to compel the final signature on a contract. *See La Grande Police Ass'n v. Hamilton*, 56 Or.App. 133, 641 P.2d 1132 (1982) (city manager commanded by writ of mandamus to execute a collective bargaining agreement embodying provisions of a lawful binding arbitration decision). *See also Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 703 P.2d 714

(1985) (mayor commanded to execute ground lease and power sales contract entered into by city council); *State v. McCombs,* 125 Kan. 92, 262 P. 579, 582 (1928) (mayor held to have ministerial duty to sign all contracts regularly passed by a board of commissioners); *Providence & Worcester v. Blue Ribbon Beef,* 463 A.2d 1313 (R.I.1983) (mayor's signing of lease extension approved by city counsel held to be ministerial).

Mandamus is a remedy that will not be granted if the right to it is doubtful. *George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co., supra,* 59 Md. at 259. Mandamus cannot be based on a court's conclusion that the decision-making official with regard to a contract, who has refused to sign the document, has really agreed to it. The moment where the County Executive's discretion under the ELRA has come to an end is the moment when he affixes his signature to an agreement. The trial court in this case erred in issuing a writ of mandamus prior to that moment.

JUDGMENTS OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED. RESPONDENTS TO PAY COSTS.