665 A.2d 1029

## FRATERNAL ORDER OF POLICE, INCORPORATED, BALTIMORE COUNTY, LODGE NO. 4

v.

## BALTIMORE COUNTY, Maryland.

**No. 158, Sept. Term, 1993.**

Court of Appeals of Maryland.

Oct. 10, 1995.

Reconsideration Denied Nov. 24, 1995.

158

Jeffrey L. Gibbs (Francis R.A. Sheed, Bredhoff & Kaiser, all on brief), Washington, DC, for petitioner.

Michael McMahon, Assistant County Attorney, (Stanley J. Schapiro, County Attorney, both on brief), Towson, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

The dispute in this case is over the validity of a provision in a collective bargaining agreement, between Baltimore County and a union, prohibiting the furlough of police officers covered by the agreement for the fiscal year 1992. The County contends that it is not bound by the provision even though the collective bargaining agreement was entered into pursuant to a county ordinance and funds were appropriated in the County's annual budget for the police officers' compensation in accordance with the agreement.

## I.

For fifteen years prior to this dispute, Baltimore County and the Fraternal Order of Police, Lodge No. 4 (the Union), representing Baltimore County police officers, entered into collective bargaining agreements covering a wide range of issues including union organization and dues, health insurance, travel allowances, leave policies, wages and overtime. Such collective bargaining agreements are authorized by § 25–51 of the Baltimore County Code.[1] Each agreement, known as a

---

1. Section 25–51 of the Baltimore County Code states in pertinent part:
   "It is ... the purpose of this act to establish procedures whereby the county administration and/or its designated representatives may negotiate in good faith with a certified employee organization with affirmative willingness to resolve grievances and disputes relating to wages, hours, and other terms and conditions of employment, as defined in this act, and to finalize in writing a memorandum of

Memorandum of Understanding, was finalized by the parties and signed by the County Executive, Union representatives, and the Labor Commissioner of Baltimore County. If a grievance [2] arises regarding the interpretation of the terms of an agreement, § 25–59 of the Baltimore County Code authorizes the use of arbitration to resolve the grievance if arbitration is provided for in the collective bargaining agreement.[3]

Pursuant to the statutory authorization for collective bargaining outlined in the Baltimore County Code, the County and the Union entered into a new collective bargaining agreement on January 25, 1991, effective for the fiscal year 1992, which was from July 1, 1991, to June 30, 1992. The agreement provided for arbitration as a method for resolving grievances and provided for yearly automatic renewals of the agreement absent six months notice from either party terminating the agreement. The agreement also contained a provision that prohibited "reduction[s] in force required by lay off or furlough during fiscal year 1992."[4] The County agreed to

---

understanding of matters agreed upon, acting within the framework of fiscal procedures, laws, rules and regulations, and Charter provisions of the county and the constitution and laws of the state."

2. As defined in § 25–52 of the Baltimore County Code, the term grievance includes "[a]ny dispute concerning the application or interpretation of the terms of a written memorandum of understanding."

3. Section 25–59(a) of the Baltimore County Code states:
   "The county and a certified employee organization may provide in a memorandum of understanding for a procedure for the resolution of grievances, as defined in 25–52, including as a final step, the arbitration of such grievances, provided that the grievance procedure so established in the memorandum of understanding shall not be in conflict with any provision of the Charter."

4. Article 13.1 of the collective bargaining agreement between Baltimore County and the Union stated (emphasis added):
   "In the event the number of sworn personnel is reduced, requiring a layoff, said layoff shall be accomplished in inverse order of departmental seniority, the lowest rank and least seniority first. No employee shall be laid off out of seniority order as described above so long as that employee has the ability to perform the available work. Employees on layoff shall be recalled in the inverse order of their layoff, provided only that those recalled have the ability to perform

this provision in return for the Union's agreement to a freeze on cost-of-living adjustments for fiscal year 1992.

Subsequent to the signing of the agreement by the County Executive and the Union, the County Executive submitted the budget for fiscal year 1992 to the Baltimore County Council, which enacted the budget. Included within the County's fiscal 1992 budget, as approved by the County Council, were appropriations for the full wages and benefits of the police officers as provided for in the collective bargaining agreement.

In January 1992, despite the prohibition against furloughs, the County, facing a revenue shortfall for 1992, enacted a plan to furlough for five days all county employees including the police officers covered by the collective bargaining agreement.[5] On January 14, 1992, the Union filed a grievance challenging the County's action with respect to the police officers covered by the agreement. In its grievance, the Union alleged that the furlough of the police officers was in violation of the express terms of the contract between the County and the Union, and the Union sought an order directing the County to cease and desist from any furlough of the police officers. Moreover, the Union requested that the employees be reimbursed for any loss of wages or employee benefits incurred as a result of the furlough. Both the Union and the County agreed that the grievance should be submitted to arbitration.

On June 25, 1992, an arbitration proceeding was held to determine whether the County had breached the collective

---

the available work. *There shall be no reduction in force required by layoff or furlough during the fiscal year 1992."*

5. According to the County, the revenue shortfall for fiscal 1992 came from a $39,325,991 reduction in state aid to Baltimore County as a result of the passage by the Maryland General Assembly of the First and Second Budget Reconciliation Acts for Fiscal Year 1992. In addition, Baltimore County suffered a $14,785,293 decrease in local source revenues for fiscal year 1992.

Other cost-saving measures, although not described in detail by the County in this case, were also apparently taken to reduce the estimated deficit of $43,579,284. The County conceded at oral argument in this case that the furlough of police officers was not necessary to meet the revenue shortfall, and that other measures could be taken.

bargaining agreement. Finding that the agreement prohibited the use of furloughs for fiscal year 1992, and that the furloughs implemented by the County constituted a breach of the agreement, the arbitrator ordered that all employees covered by the agreement be compensated for loss of wages and benefits incurred as a result of the furlough.[6]

After the arbitrator's decision, the County filed in the Circuit Court for Baltimore County a petition to vacate the award. The Union responded with an answer and a cross-petition to confirm the award. The County filed a motion for summary judgment, and the Union filed a cross-motion for summary judgment.

In requesting summary judgment, the County argued that, despite the agreement's express language prohibiting furloughs, the arbitrator exceeded his authority by ruling on this matter. The County maintained that the determination of whether to impose furloughs is within the exclusive purview of the County government because it affects the compensation to be received by employees. In effect, the County asserted that, although the County and the Union were authorized by ordinance to enter into a collective bargaining agreement, any issues regarding the setting of compensation were within the exclusive domain of the County and could not be arbitrated. Moreover, the County claimed that, even if the arbitrator had authority to rule on whether the furloughs breached the collective bargaining agreement, the County had authority, under § 714 of the County Charter, to initiate the furlough provision whenever there is a revenue shortfall.

The Union responded that an improper delegation to the arbitrator did not take place, and that the arbitrator was fully

---

**6.** The County initially argued that the proposed furlough did not contradict the terms of the collective bargaining agreement. It asserted that the agreement only prohibited actions constituting a permanent reduction in force and that the proposed furlough did not constitute a "reduction in force" because it was only a temporary action. The arbitrator found that the plain meaning of the language in the parties' agreement prohibited any type of temporary layoff, including the use of furloughs. This issue has not been pursued by the County.

authorized to decide whether the County had breached its agreement. According to the Union, § 714, which the County relied upon, provided no basis for the County to violate its contract. Furthermore, the Union argued that the County's violation of the collective bargaining agreement was an unconstitutional impairment of the obligation of contract.

After the submission of briefs and two hearings, the circuit court vacated the arbitrator's award. The court, relying upon *Anne Arundel County v. Fraternal Order*, 313 Md. 98, 543 A.2d 841 (1988), and *Maryland Cl. Emp. Ass'n v. Anderson*, 281 Md. 496, 380 A.2d 1032 (1977), held that "there can be no legally binding arbitration relating to compensation of county employees unless and until" either a state public general law or the "County Charter authorizes that arbitration. . . ." The court viewed the furlough prohibition in the contract as "affecting" compensation. Since neither state law nor the Baltimore County Charter "authorize[d] the [County] Executive to legally bind the Baltimore County government," the court held that the furlough prohibition and the arbitration were invalid.

According to the circuit court, the County had impermissibly delegated its budget-making authority, which includes the setting of compensation, by submitting to an arbitrator the issue of whether the furlough prohibition had been breached. The court also indicated that § 714 of the Baltimore County Charter authorized the County Executive to reduce the appropriation in the budget for the police officers' compensation. Finally, the circuit court rejected the Union's argument that the County's action amounted to an impairment of the obligation of contract in violation of Article I, § 10, of the United States Constitution.

The Union filed a notice of appeal to the Court of Special Appeals and, before the case was heard by the intermediate appellate court, filed in this Court a petition for a writ of certiorari. The petition presented three questions as follows:

"I. Did the Circuit Court err when it concluded that the agreement to arbitrate the dispute over the furlough of police officers and the resulting Arbitrator's Award were

not authorized by the Baltimore County Charter and were therefore invalid because they entailed the delegation of the authority of the County Executive and/or County Council to set compensation?

"II. Did the Circuit Court err when it concluded that the County Executive had the power under Section 714 of the Baltimore County Charter to furlough police officers in violation of the Memorandum of Understanding?

"III. Did the Circuit Court err in failing to find that the County's abrogation of the no-furlough clause of its Memorandum of Understanding with [the Union] was an unconstitutional impairment of contract?"

We granted the petition and shall reverse. In light of our conclusion that the circuit court erred as a matter of Maryland law, we need not and do not reach the federal constitutional issue that the Union presents in its third question.

## II.

Integral to the resolution of this dispute is the interplay between Baltimore County's budgetary process, prescribed in the County's Charter, and the County's collective bargaining ordinance. Baltimore County, pursuant to Article XI–A of the Constitution of Maryland, adopted a home rule charter form of government in 1956. The County's Charter mandates the use of an executive budget system. Section 706 of the Charter requires the County Executive, "[n]ot later than seventy-five days prior to the end of the fiscal year," which runs from July 1 to June 30, to prepare and submit to the County Council a budget for the ensuing fiscal year. This budget consists of "a current expense budget, a capital budget and capital program, and a budget message." *Ibid.* Included within the current expense budget are "expenditures recommended by the county executive for the ensuing fiscal year for each program or project which shall be classified by agency, charter and object." *Ibid.* Once the proposed budget is submitted to the County Council, § 709 delineates the County Council's responsibilities by providing that

"the county council may decrease or delete any item in the budget except those required by the public general laws of this state.... The county council shall have no power to change the form of the budget as submitted by the county executive, to alter the revenue estimates except to correct mathematical errors, or to increase any expenditures recommended by the county executive for current or capital purposes. The adoption of the budget shall be by the affirmative vote of a majority of the total number of county council members ... on an ordinance to be known as the Annual Budget and Appropriation Ordinance of Baltimore County."

Thus, the budgetary process requires the County Executive to submit a budget no later than mid-April, which is approximately seventy-five days prior to the beginning of the next fiscal year, and the County Council to approve or disapprove of the appropriations made therein.

In conjunction with the timing requirements outlined in the County's budgetary process, the County's collective bargaining ordinance contemplates that negotiations will take place and a memorandum of understanding will be concluded prior to the final date by which the County Executive must submit the annual budget. Section 25–57 of the collective bargaining ordinance provides, *inter alia,* for "negotiations" between the employer and union representatives, including a provision stating that the county "shall not be required to negotiate with any employee organizations certified after March 1 of any fiscal year regarding wages, hours, and terms and conditions of employment, which would require legislation or the appropriation of funds in the annual budget." Section 25–57 also provides that representatives of the County and the Union shall "meet at reasonable times and ... appropriately relate such meetings to the *county's budget submission date* and negotiate in good faith with respect to wages, hours, terms and conditions of employment and the drafting of written memorandum of understanding containing all matters agreed upon." (Emphasis added).

Should a dispute arise during negotiations, § 25–58 of the collective bargaining ordinance specifies that the parties may enter into advisory arbitration and states as follows (emphasis added):

"In the event that the dispute remains unresolved after fact-finding and mediation efforts, the personnel and salary advisory board shall meet with the negotiating parties, either separately or together, and review the positions of each. The personnel and salary advisory board will afterward submit its final recommendations to the county executive for his consideration prior to *April 5.*"

The collective bargaining law therefore dictates that wages and benefits to be paid to employees, as agreed upon by a union and the County and embodied within a memorandum of understanding, must be duly negotiated prior to the submission of the budget to the County Council. The collective bargaining law thus contemplates that any agreements affecting appropriations are fully subject to the County's annual budget process.

### III.

In challenging the validity of the prohibition against furloughs, Baltimore County's principal argument is that the County government cannot bind itself on matters affecting the payment of money unless the County Charter or a public general law enacted by the General Assembly provides the authority for doing so. The circuit court, in agreeing with the County, relied on *Anne Arundel County v. Fraternal Order,* supra, 313 Md. 98, 543 A.2d 841, and *Maryland Cl. Emp. Ass'n v. Anderson, supra,* 281 Md. 496, 380 A.2d 1032. The position of the County and the circuit court represents a misreading of this Court's opinions.

In *Maryland Cl. Emp. Ass'n v. Anderson, supra,* we invalidated a provision in the Harford County collective bargaining ordinance which required binding arbitration if the County and a union reached an impasse during negotiations prior to the signing of a collective bargaining agreement. In

*Anderson,* the County and a union could not agree on the percentage increase in salaries to be given to employees for fiscal year 1975. Section 201B(h)(5) of the Harford County Code required that the issue be submitted to binding arbitration. After reaching an impasse, Harford County and the union submitted the dispute to arbitration, and the arbitrator made an award increasing the employees' wages by 7.8% for the next fiscal year. The Harford County Council, however, did not agree to put the award into effect; instead, it approved a $640 across-the-board raise, which was included in the annual budget and appropriation ordinance. In rejecting the union's claim that the Harford County Executive and the County Council were bound by the arbitrator's decision, we stated in *Anderson* as follows (281 Md. at 512, 380 A.2d at 1041):

> "[H]ad a State public general law or the County Charter authorized the binding arbitration provisions enacted by the County Council, the provisions would be valid. But there is no such authority in either a public general law or the County Charter.... [T]he prevailing rule in other jurisdictions is in complete accord with the view expressed in *Mugford [v. City of Baltimore,* 185 Md. 266, 44 A.2d 745 (1945)] to the effect that absent such authorization it is invalid for a municipality or charter county to attempt to bind itself in the exercise of legislative discretion over compensation of its public employees. We follow that rule. Because the Harford County ordinance attempted to bind the County in the exercise of its legislative discretion over public employee compensation without being authorized to do so by a public general law or by the County Charter, the provisions of the ordinance to that end are invalid."

Baltimore County asserts that the issue in *Anderson* is the same as the issue presented here because, in the instant case, the arbitrator's decision enforcing the prohibition against furloughs in the collective bargaining agreement affects compensation and thus allegedly removes from the County Executive and County Council their legislative discretion with regard to appropriations.

While we agree that the provision prohibiting furloughs does in fact affect compensation, we disagree with the County and the circuit court that this matter could not be subject to arbitration. The crucial distinction between *Anderson* and the instant case is that, in *Anderson*, the arbitration and the arbitrator's decision was prior to the enactment of the budget for the fiscal year involved. Under the Harford County collective bargaining ordinance involved in *Anderson*, the arbitrator's decision purported to bind the County Executive and the County Council in enacting the annual budget for the ensuing fiscal year. Moreover, despite the collective bargaining ordinance, the Harford County Executive and County Council refused to appropriate funds reflecting the 7.8% wage increase, and that wage increase never became part of the County's budget.

In the instant case, however, the Baltimore County Executive and County Council appropriated the funds necessary for the full personnel expenditures covered by the collective bargaining agreement. This included compensation for the police officers covering the entire fiscal year without any furloughs. The collective bargaining agreement was fully subject to the appropriation process set forth in the Baltimore County Charter. The arbitrator's decision was rendered after the enactment of the annual budget, and it was entirely consistent with that budget. Instead of the arbitrator attempting to bind the County Executive and the County Council in the performance of their budgetary functions under the Charter, as in the *Anderson* case, the arbitrator's decision in the present case reflected an implementation of the Executive's and Council's budget decision in accordance with the Charter.

Our decision in *Anne Arundel County v. Fraternal Order, supra,* 313 Md. 98, 543 A.2d 841, similarly does not support the position of the County and the circuit court in the present case. In *Anne Arundel County,* a collective bargaining agreement between a union and Anne Arundel County called for binding arbitration with respect to the classification of positions to be included within the union's representation unit. In holding that the County was bound by the arbitration, this

Court stated (313 Md. at 111, 543 A.2d at 848) (emphasis added):

"[A] charter county may not, absent authorization by public general law or charter provision consistent with Art. XI–A of the Maryland Constitution, delegate to an arbitrator a discretionary governmental power or function which the charter vests in the county executive and county council. Furthermore, the ultimate determination of county employee's compensation is, under the Anne Arundel County Charter, one of these nondelegable governmental functions. Therefore, an arbitrator's decision regarding employee compensation could not bind the County Executive and County Council in *submission and enactment of the budget under the executive budget system prescribed by the Anne Arundel County Charter.*"

Because the determination of whether a certain employee position would be included within a bargaining unit did not impact on the compensation which the employee would receive, this Court held that an arbitrator's decision in favor of the union would not bind the Anne Arundel County Executive and County Council in exercising their basic functions under the Charter in the submission and enactment of the annual budget. We then said (313 Md. at 116, 543 A.2d at 850):

"[W]e agree with the Union's position that an arbitrator's decision placing the lieutenants' in the same collective bargaining unit will have *no direct effect* on the lieutenants compensation. As the Union stated in oral argument before us, if it is determined that the lieutenants are to be included in the unit, the matter of their compensation is entirely subject to negotiation and the processes set forth in the County Charter. According to the Union, and we concur, the existing compensation and overtime provisions in the collective bargaining agreement, applicable to the current members of the unit, will not automatically apply to the lieutenants.

"In our view, the determination of whether positions should be included or excluded from the representation unit is not so determinative of employee compensation as to be

an inappropriate subject for arbitration in the absence of authority granted by the Charter or General Assembly. This type of employee classification does not have the direct impact upon the Executive's and Council's duty to set employee compensation that actual determination of the wages and salary of county employees does."

Unlike the disputed issue in *Anne Arundel County v. Fraternal Order,* the prohibition against furloughs contained within the collective bargaining agreement in the instant case does affect compensation. Nevertheless, the arbitrator's decision in this case regarding employee compensation did not bind the County Executive and County Council in the submission and enactment of the budget under the executive budget system prescribed by the Baltimore County Charter. Instead, in the case at bar, the County Executive and County Council fully exercised their legislative discretion by enacting a budget appropriating the funds for the compensation of those employees covered by the collective bargaining agreement. The subsequent arbitrator's decision was fully consistent with the enacted budget.

In *Freeman v. Local 1802,* 318 Md. 684, 691, 569 A.2d 1244, 1247 (1990), this Court reiterated the principle set forth in the *Anderson* and *Anne Arundel County* cases

"that, absent authorization from the county charter or State public general law, the local [collective bargaining] ordinance could not validly provide for the delegation to others 'of certain duties involving the exercise of discretion specifically assigned by a county charter to the county executive and council.'"

We then explained as follows (318 Md. at 691, 569 A.2d at 1247):

"In other words, simply put, a local collective bargaining ordinance could not violate the county charter, unless the General Assembly of Maryland by public general law in effect abrogated the inconsistent provision of the charter."

In the case before us, the pertinent provisions of the collective bargaining ordinance, the memorandum of understanding, and

the arbitrator's decision did not delegate to others the budget and appropriation function which the Baltimore County Charter assigns to the County Executive and County Council. Simply put, there was no violation of the Charter in this case. The County Executive and County Council exercised their appropriation function under the Charter. The annual budget enacted by the Executive and Council could have appropriated less money for police officers than the collective bargaining agreement called for and could have provided that the shortfall be made up by furloughs of police officers. If the enacted annual budget had done this, the budget provisions, and not the collective bargaining agreement's terms, would prevail under our opinions in *Anderson, Anne Arundel County,* and *Freeman.*[7] But the enacted annual budget for fiscal 1992 did not appropriate less money for police officers' compensation than contemplated by the collective bargaining agreement. The arbitrator's decision did not alter the amount of compensation set forth in the budget. Rather, the arbitrator determined only that the County had violated the terms of the contract which it had made, and that the County should pay to the police officers the compensation that had already been appropriated in the annual budget pursuant to the County Charter.

## IV.

The County makes the alternative argument that § 714 of the Baltimore County Charter authorized the furloughs, thus entitling the County to violate its contract with the Union. The County asserts that this provision gives the County the power to violate its contracts when total appropriations exceed available income.

Section 714 states as follows:

"**Sec. 714. Work Programs and allotments.**

"Before the beginning of each fiscal year the head of each office, department, institution, board, commission or other

---

7. *See also Mugford v. City of Baltimore,* 185 Md. 266, 44 A.2d 745 (1945).

agency of the county government shall submit to the county administrative officer, when required by him, a work program for such year. Such program shall include all appropriations for the operation and maintenance and purchasing of equipment and shall show the requested allotments of appropriations for such office, department, institution, board, commission or agency by fiscal periods within the fiscal year. The county administrative officer shall review the requested allotments in the light of the work program of the office or agency concerned, and may, with the approval of the county executive, revise, alter or change such allotments before approving the same. The aggregate of such allotments shall not exceed the total appropriation available to such office or agency for the fiscal year. A copy of the allotment as finally adopted by the county administrative officer shall be filed with the director of finance, who shall approve all expenditures for the various offices, departments, institutions, boards, commissions and other agencies of the county to be made from the appropriations on the basis of the allotments and not otherwise. The allotments may be revised during the fiscal year in the same manner as the original allotment was made. If at any time during the fiscal year the county administrative officer shall ascertain that the available income, plus unexpended balances, for the year may be less than the total appropriations, he shall reconsider the work programs and allotments of the several offices and agencies as aforesaid, and shall recommend a revision thereof to the county executive so as to forestall the making of expenditures in excess of the income and fund balances."

Upon examination, it is apparent that § 714 does not support the County's position. The section does not refer to contractual obligations. Nor does it contain any language which indicates that the County has the power unilaterally to breach its contracts. Section 714, titled "Work Programs and Allotments," seems to be limited to "appropriations for the operation and maintenance and purchasing of equipment." The provision appears to provide a mechanism by which the Coun-

ty administrative officer may reallocate or modify appropriations relating to equipment when necessary. In any event, § 714 is not a provision authorizing the County to reduce *any* appropriation in the enacted budget because of a revenue shortfall. It makes no mention of employee compensation or of payments which the County is contractually obligated to make. Neither the Baltimore County Charter nor the Baltimore County Code contains any provision which authorizes what the County did here.[8]

■ Baltimore County also argues that the First Budget Reconciliation Act for Fiscal Year 1992, enacted by the General Assembly, authorized local governments to take whatever action they deemed necessary, including the abrogation of contracts, in responding to the reduction in State aid for 1992. *See* Ch. 3 of the Acts of the Second Special Session, September 15, 1991. Nothing in the statutory language or the legislative history of the Budget Reconciliation Act, however, indicates that the Act authorized local governments to breach their contracts. Indeed, included in the legislative history of the Act is a memorandum from Delegate Timothy Maloney, Chairman of the pertinent subcommittee of the House Appropriations Committee, dated October 21, 1991, stating that Senate Bill 34 and House Bill 20, the Senate/House versions of the Budget Reconciliation Act, do not "give local governments any additional authority to abrogate or impair collective bargaining agreements, either for their own employees, or employees of the Boards of Education and community colleges in their jurisdictions."

For the above reasons, we hold that Baltimore County was bound by the contract which it had made with the Union

---

8. Compare the statute involved in *Judy v. Schaefer,* 331 Md. 239, 627 A.2d 1039 (1993), where we held that Maryland Code (1985, 1988 Repl.Vol.), § 7–213 of the State Finance and Procurement Article, validly entitled the Governor to reduce the Legislature's appropriations up to 25%. We need not in the present case explore the effect of a similar statute upon the dispute between the County and the Union, since Baltimore County has no similar statute.

prohibiting the furlough of police officers during fiscal year 1992.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE COUNTY REVERSED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY BALTIMORE COUNTY.*